STATE OF NEVADA, BY AND THROUGH ITS WELFARE DIVISION OF THE DEPARTMENT OF HEALTH, WELFARE AND REHABILITATION, APPELLANT, *v.* CAPITAL CONVALESCENT CENTER, INC.; AND MAX FAYLOR AND HAROLD N. FAYLOR, INDIVIDUALLY AND DOING BUSINESS AS CAPITAL CONVALESCENT CENTER, RESPONDENTS.

No. 7730

March 22, 1976                    547 P.2d 677

---

*Robert List,* Attorney General, Carson City; *Margie Ann Richards,* Deputy, Carson City; *Marilyn V. Romanelli,* Deputy, Las Vegas, for Appellant.

*Arthur J. Bayer, Jr.,* Carson City, for Respondents.

## OPINION

By the Court, MOWBRAY, J.:

This is an appeal from an order of the district court granting summary judgment in favor of the respondent-defendant for $27,445.86, hereinafter referred to as Convalescent, and against the appellant-plaintiff, hereinafter referred to as State.

The judgment is predicated upon a written contract between the two parties dated April 1, 1970, wherein Convalescent agreed to provide certain health care services for medically indigent persons for State at a stipulated per diem rate of $16 per person. The contract also provided, among other things, that the agreement would remain in effect until terminated by 30 days' written notice given by one of the parties of intent to do so.

State commenced this action in August 1972, seeking the recovery of $11,896.08 for advances paid Convalescent during the period March 16, 1971, through December 31, 1971; State also sought recovery for alleged overpayments covering the period January 1, 1972, to August 20, 1972, which State estimated to be about $9,000. Although State sued on the April 1, 1970, contract of the parties, alleging that it would be terminated on August 20, 1972, State claimed that paragraph 2 thereof, fixing "$16.00 as the total daily rate of payment for care of State patients", had been modified from a flat fixed per diem rate to a cost reimbursement rate with a fixed profit factor, said change accomplished retroactively to March 16, 1971, by the Nevada State Welfare Board meeting in June 1971, wherein it adopted the cost reimbursement method.

On August 30, 1972, Convalescent filed its answer and counterclaim, seeking compensatory damages of $20,384.90, based on the $16 per diem rate as set forth in the parties' contract, plus $10,000 punitive damages, attorney's fees, and costs. Subsequently, Convalescent, in an amended counterclaim, increased its prayer for compensatory damages to $26,186.06 and abandoned its claim for punitive damages.

State petitioned the court on January 8, 1973, in accordance with NRCP 67, for an order permitting State to deposit with the clerk the sum of $10,383.13, as an offer of judgment.

The sum was deposited on January 10, 1973. Convalescent never accepted the offer.

State filed on August 29, 1973, a motion for summary judgment, alleging that "[w]hen the heat and smoke are eliminated, this case resolves itself into a few questions which the Court may decide as a matter of law since there are now no *genuine* issues as to any *material* facts." Thereafter, on October 9, 1973, Convalescent filed its motion for summary judgment. Both motions were heard on October 23, 1973, and the district judge filed his memorandum of decision on February 8, 1974; notice of entry was filed February 11, 1974.

In the memorandum of decision, the district judge found that State and Convalescent entered into a contract dated April 1, 1970,[1] and that the terms of the contract remained unaltered and in effect until State terminated the contract effective August 20, 1972;[2] that State's suggested cost reimbursement method of payment had never been accepted by Convalescent;[3] that Convalescent had not been paid for 1,946 patient care days.[4] Therefore, applying the 1,946 patient care days to the

---

[1] "2. That the State entered into an Agreement with Capital Convalescent Center, dated April 1, 1970, providing for a payment of Sixteen ($16.00) Dollars per patient per day for the care of Welfare patients certified by the State as recepients [sic] of Title XIX of the Social Security Act (Medicaid)."

[2] "3. That the terms of this contract of April 1, 1970, remained unaltered and in effect until the Welfare Department terminated the contract on August 20, 1972. A termination notice was sent by letter of August 2, 1972, from the State of Nevada Welfare Division, signed by John Duarte, Acting Administrator, indicating the State would not make any further payments after August 20, 1972. The cause of termination of the April 1, 1970 contract was because of a dispute over a new payment proposal which was not accepted by Capital Convalescent. The contract further provided that the terms of the agreement were to remain in effect until terminated by either party with written notice given at least thirty days in advance."

[3] "4. That the State introduced a cost reimbursement method of payment which would have changed the price terms of the April 1, 1970 contract. Negotiations for acceptance were without success. That a proposed agreement dated June 30, 1972, referencing this new payment formula was submitted to Capital Convalescent Center but was not executed by both of the parties and was in fact voided by the State. A valid provider agreement such as the contract of April 1, 1970, and June 30, 1972, was required by Federal law as well as by general contract law. (45 CFR 249.10(b)(4)(i)(h).)"

[4] "6. That for the purposes of the motions herein presented, the State accepted the accuracy of Capital Convalescent's Exhibit 'A' attached to their Reply to Interrogatories, filed July 12, 1973, representing 1,946 per patient days for which the State is responsible to Capital Convalescent at $16.00 per patient per day. In addition, the

$16 per diem rate, the judge found that State owed Convalescent $27,445.86 (after deducting a $3,690.14 payment made by State); and judgment was entered accordingly. State has appealed, seeking a reversal and a remand ordering a full trial.

1. First State claims that the district court lacked subject matter jurisdiction in the case, because Convalescent failed to comply with NRS 41.036[5] and NRS 353.085.[6] We do not believe that the aforementioned statutes have any application in the instant case. Here, State initiated the action against Convalescent, and Convalescent filed a compulsory counterclaim. NRCP 13(a), (c).[7] It would be anomalous to hold that a

---

State's Request for Admissions, Admission Number One and Exhibit 'A' attached thereto, comports exactly with Capital Convalescent's Exhibit 'A' attached to their Reply to Interrogatories mentioned above, except as to the addition of 34 patient days for a patient 'D', #28895. Thus, the figures set forth by the respective parties are accepted as accurate as to the 1,946 per patient days."

[5]NRS 41.036 reads in part:
"2. Every claim against the state arising out of contract shall be presented in accordance with the provisions of NRS 353.085 or 353.090 . . ."
The applicability, if any, of this court's decision in Turner v. Staggs, 89 Nev. 230, 510 P.2d 879 (1973), has not been raised and is not considered.

[6]NRS 353.085 reads in part:
"1. The state board of examiners shall:
"(a) Examine all claims arising out of contract . . .
"(b) Take all evidence in regard to the same which may be offered by the claimant or deemed proper by the board.
"2. The evidence shall be reduced to writing, and the petition, the written evidence and the opinion of the board in reference to the merits of the same shall be transmitted to the legislature on the first day of its next session."

[7]NRCP 13(a), (c):
"RULE 13. COUNTERCLAIM AND CROSS-CLAIM
"(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.
" . . .
"(c) Counterclaim Exceeding Opposing Claim. A counterclaim may

defendant, in court in an action he did not bring, is required to plead a counterclaim against the State because it is compulsory under Rule 13(a), but once plead, his counterclaim is subject to dismissal on the ground that he had not, before being sued, taken affirmative action as set forth in NRS 41.036, *supra.* Such a conclusion is consistent with the purpose of the statute, which is to prevent the State, a county, or a city from being surprised by claims it has not had time to consider administratively. As long as the same transaction or occurrence is involved, surprise is minimized. Cf. Frederick v. United States, 386 F.2d 481 (5th Cir. 1967). The district court did have jurisdiction to entertain Convalescent's counterclaim.

2. The principal issue presented is whether this case should have been disposed of by summary judgment. Here, both parties sought summary judgment, and both claimed there was no material issue of fact to be determined. This court said, in City of Las Vegas v. Cragin Industries, Inc., 86 Nev. 933, 937, 478 P.2d 585, 588 (1970):

"Because all the parties moved for summary judgment, the trial court was at liberty to find that the parties had conceded that there remained no material question of fact and that the case could be determined on a question of law. . . . [T]he appellants, in their motions for summary judgment[,] both alleged that there is 'no genuine issue as to any material fact' and they are now precluded from changing their position upon this appeal. [Cites omitted.]"

The issue before the district court was the interpretation to be given the April 1, 1970, contract of the parties regarding the daily rate of payment for the State's patients. Paragraph 2 expressly provided:

"WHEREAS, Vendor agrees:

" . . .

"2. To accept $16.00 as the total daily rate of payment for care of State patients and will not bill patient, or relatives, for an additional amount."

The agreement was to remain in effect until terminated by 30 days' advance written notice. The agreement provided:

"NOW, therefore, this AGREEMENT shall be in effect until terminated by either party to this AGREEMENT by prior written notice given to the other at least thirty (30) days in advance of the effective date thereof."

---

or may not diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party."

It is agreed that written notice of termination of the contract was never given by State until August 1972; the parties agreed that State owed Convalescent for 1,946 patient care days. The dispute is narrowed to whether the $16 per diem provision had been superseded by a cost reimbursement method of payment. The court found that it had not, since the contract of April 1, 1970, was binding upon the parties until it was terminated.

We find that there was no material factual issue of dispute remaining in the instant case and that the record supports the finding of the district judge, with the exception that it was error to grant Convalescent attorney's fees, as the amount awarded Convalescent on its counterclaim exceeded $10,000. NRS 18.010, subsection 3(b).[8] In all other respects, the judgment is affirmed.

GUNDERSON, C. J., and BATJER, ZENOFF, and THOMPSON, JJ., concur.

---

[8] NRS 18.010, subsection 3(b):

"3. The court may make an allowance of attorney's fees to:

" . . .

"(b) The counterclaimant as prevailing party when he has not recovered more than $10,000 . . ."