**FRANK BRISCOE COMPANY, INC., a corporation, Plaintiff,**

v.

**COUNTY OF CLARK, a political subdivision of the State of Nevada, Defendant.**

**Civ. No. LV 80–135 RDF.**

United States District Court, D. Nevada.

March 3, 1986.

Morton R. Galane, James J. Jimmerson, Las Vegas, Nev., Pepe & Hazard, Anne E. & Joseph Lupica, Louis Pepe, Hartford, Conn., William M. Beadie, Moore, Costello & Hart, St. Paul, Minn., for plaintiff.

Robert J. Miller, Dist. Atty., Victor W. Priebe, Deputy Dist. Atty., Las Vegas, Nev., Lewis, Mitchell & Moore, Roy S. Mitchell and A. Wayne Lalle, Vienna, Va., for defendant.

## DECISION AND ORDER ON MOTIONS TO DISMISS

ROGER D. FOLEY, District Judge.

### INTRODUCTION

Pursuant to Chapter 790, 1973 Statutes of Nevada, the County of Clark of the State of Nevada (County) was assigned the responsibility for the development and implementation of a pollution abatement plan for the Las Vegas Wash and the Las Vegas Bay arm of Lake Mead. The County, pur-

suant to the above authority, adopted a waste water resources management plan, electing to build an advanced waste water treatment plant (AWTP) to export from the Las Vegas Wash fully processed waste water solids, the product of the AWTP, and to reclaim the waters discharged from the plant for in-valley irrigation, power and industry use and possibly future ground water recharge, all as described in County's report of September 1973 to the Governor.

The County, desiring to design, construct, own, operate and maintain an AWTP as soon as possible, engaged, by written contract of January 7, 1974, Exhibit 5 in evidence, the consulting services of a group of professional engineering firms (NECON) to provide complete professional engineering and technical services for the planning, designing, financing and construction of the AWTP. Among the many duties undertaken by contract with the County, NECON was to design an AWTP of approximately 90 million gallons per day and connect it with the existing secondary waste water treatment plant.

NECON prepared plans and specifications and bidding documents for the County which the County approved. (Exhibit 1, Exhibit 1.1, Exhibit 1.2 and Exhibit 1.3.) After the bidding process, the County awarded the contract for the construction of the AWTP to Frank Briscoe Company, Inc. (Briscoe), the plaintiff herein, on March 17, 1977 (Exhibit 2), and work began shortly thereafter.

On May 7, 1980, Briscoe brought this action on the construction contract for the AWTP against the County and others seeking from the County declaratory and injunctive relief and specific performance of the contract. Briscoe did not seek damages against the County. On July 31, 1980, the County answered Briscoe's complaint and asserted by way of counterclaim that Briscoe had breached the contract. On September 15, 1980, Briscoe replied to the County's counterclaim by a counterclaim in reply alleging that the County had breached the contract. On April 2, 1984,

Briscoe, with leave of the Court, filed its amended complaint. On April 16, 1984 (# 714), the County filed a motion to dismiss the amended complaint. The same was responded to and the County replied. The Clerk submitted the motion to the Court for decision on October 3, 1984. The motion remains undecided.

All of the private corporation defendants named in the amended complaint have been previously dismissed. (See order re motions 6/12/85, # 1241.) In addition to the County, there remain defendants named in the amended complaint Clark County Sanitation District No. 1, a special county district, its Board, the Board of County Commissioners, and a number of individual county officers and employees (noncontracting county defendants).

## I. THE NONCONTRACTING COUNTY DEFENDANTS

■ This Court believes that the County is correct that there can be no ex contractu liability by agency. There is no privity of contract between Briscoe and the noncontracting county defendants. As a matter of law, a noncontracting county defendant cannot be held liable in contract to Briscoe even if the agency allegations are true. All of the remaining defendants in the amended complaint, except Clark County, are dismissed with prejudice.

## II. WAIVER OF SOVEREIGN IMMUNITY

In 1965 the State of Nevada, for itself and its political subdivisions, conditionally and with limitation, waived its sovereign immunity from suit and consented to have its liability determined in accordance with the same rules of law as are applied to civil actions against natural persons and corporations. (NRS 41.031.) Hence, this action for breach of contract, breach of implied warranty and for tortious breach of contract and breach of implied warranty as set forth in the amended complaint, could lawfully be brought against the County subject to the conditions and limitations of the waiver.

## (A) *The Discretionary Function Exception*

NRS 41.032 provides in pertinent part: [n]o action may be brought under NRS 41.031 or against an officer or employee of the state or any of its ... political subdivisions which is:

. . . . .

2. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer or employee of any of these, whether or not the discretion involved is abused.

It should be noted that by NRS 41.031 the state for itself and its political subdivisions waives sovereign immunity and consent to be sued for, among other claims that could be brought against a private person or corporation, claims for breach of contract and for tort. This is unlike the Federal Tort Claims Act, 28 U.S.C. § 1346(b), which, conditionally and with limitations, waives United States sovereign immunity from tort. But the language of the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), is in substance identical with the language of NRS 41.032(2). Thus, decisions of the United States Supreme Court dealing with the scope of 28 U.S.C. § 2680(a), *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427, and later cases of the high court, are controlling and other federal cases are good precedent in the construction of NRS 41.032(2).

The County's motion to dismiss argues that Briscoe, in its amended complaint, seeks to hold the County liable for its actions taken and its failure to act during the exercise or performance of discretionary functions or duties. In considering this argument, it is noted that NRS 41.032(2) is as broad as is the waiver of sovereign immunity, NRS 41.031, and applies to actions for breach of contract, breach of implied warranty and for all actions sounding in tort, including cases arising out of breach of contract and breach of implied warranty as alleged in the amended complaint. Briscoe attempts to get around NRS 41.031 and 41.032(2) by claiming that the County engaged in proprietary acts, rather than governmental acts. This effort must fail. The Nevada Legislature abolished any such distinction in 1965 when it enacted NRS 41.031 et seq., *Harrigan v. Reno*, 86 Nev. 678, 475 P.2d 94 (1970). Nevada cases prior to 1965 and cases from other jurisdictions that are in point, where the defense of sovereign immunity was avoided in one way or another, such as by distinguishing proprietary acts from governmental acts, are not controlling or persuasive as to Nevada law after 1965. As the Nevada Supreme Court stated in *State v. Silva*, 86 Nev. 911, 914, 478 P.2d 591 (1970):

> Before the enactment of the statutory waiver of immunity, Nevada case law on the viability of the doctrine of sovereign immunity was uncertain and in flux. *Walsh v. Clark Co. School Dist.*, 82 Nev. 414, 419 P.2d 774 (1966); *Hardgrave v. State ex rel. Hwy. Dep't*, 80 Nev. 74, 389 P.2d 249 (1964); *Rice v. Clark County*, 79 Nev. 253, 382 P.2d 605 (1963). The trend was toward the judicial abolition of that doctrine. *Rice v. Clark County*, supra. It is only fair to assume that the 1965 Legislature reacted to that trend, and elected to waive immunity within limits and impose a ceiling upon the recovery allowable to a claimant, rather than await further judicial action upon the subject. The apparent legislative thrust was to waive immunity and, correlatively, to strictly construe limitations upon that waiver.

Since 1965, all claims of whatever nature that could be brought against natural persons or corporations can be brought against the State and its political subdivisions only under the conditions and limitations spelled out in the 1965 waiver of Sovereign Immunity Act.

This Court does not have jurisdiction under NRS 41.031 over this suit against the County to the extent that the actions or inactions of the County complained of were

taken or omitted during the exercise or performance of discretionary functions or duties. NRS 41.032(2) is an exception to the waiver of sovereign immunity. Sovereign immunity is not waived if the action or inaction complained of was taken or omitted during the exercise or performance of discretionary function or duty.

1. *Third Count of Amended Complaint*

(a) *The Termination of NECON*

■ In paragraphs 23(a) and (b) of the Third Count, the County's decision to terminate NECON and to replace it with other engineers, without providing Briscoe with access to NECON's design calculations and other work product, after the contract of Briscoe was entered into and after construction had begun, is alleged by Briscoe to have been a breach of contract.

The decision to terminate NECON without providing access to their design calculations and other work product, and the replacing of NECON with other engineers were all actions or inactions taken during the exercise or performance of discretionary functions and are exempt and not actionable.

(b) *Segmentation into Four Separate Phases*

■ In paragraphs 23(d), (e) and (f) of the Third Count, the County's decision to segment the job into four separate phases and to require Briscoe to submit progress schedules in accordance with such segments is alleged by Briscoe to have been a breach of contract.

The decision to divide the construction project into four separate phases and to impose different dates for commencement of construction of each phase, were all actions or inactions taken during the exercise or performance of discretionary functions, and are exempt and not actionable.

(c) *Pre-bidder Submittals*

■ In paragraphs 23(g) and (h) of the Third Count, the manner in which the County examined the pre-bid submittals and its failure to provide bidders with information as to the modification of plans and specifications necessary to accommodate pre-bid submittals in the bids, is assigned by Briscoe as a breach of contract.

The procedures adopted by the County in reviewing pre-bid submittals and not providing bidders with information about the same prior to bid, and the decision not to perform design work, and the decision not to modify the plans or specifications to accommodate pre-bid submittal equipment, are all actions or inactions taken during the exercise or performance of discretionary functions and are exempt and not actionable.

(d) *Defective Plans and Specifications*

■ In paragraph 23(i) of the Third Count, Briscoe alleges that the plans and specifications furnished in the construction of AWTP were defective, inadequate and incomplete and that the County in this connection breached implied warranties.

The preparation of the plans and specifications for the construction of the AWTP, including the instruction to bidders by the County, all approved by the County, were the product of the exercise of the County's discretionary function and are exempt and not actionable.

*Effect of Exercise of Discretionary Function May Result in Breach of Contract or Breach of Implied Warranty*

■ Normally, the effects of, or the results of, or the product of, the exercise or failure to exercise discretionary functions, like the exercise or failure to exercise itself, are also not actionable. However, on March 17, 1977, the County entered into the contract for the construction of the AWTP with Briscoe and thereafter the effects of, or the results of, or the product of, the exercise or failure to exercise discretionary functions upon the construction contract and Briscoe's performance thereof, became actionable by virtue of the construction contract. This is so because the County in the contract made certain prom-

ises, express and implied, and for the breach of which Briscoe can recover damages. The County, having made such promises, must be accountable in court for any breach of the same and cannot shield itself from liability simply because the damages alleged were the effect of, the result of, or the product of, the exercise or failure to exercise discretionary functions. It is not for the manner in which the County exercised or failed to exercise discretionary functions that Briscoe seeks damages in paragraphs 23(a), (b), (d), (e), (f), (g), (h) and (i) of the Third Count of the amended complaint, but for the effect of that exercise, or failure to exercise, discretionary functions upon the contract. The effect alleged is a breach of contract or breach of implied warranty, a breach of promises made by the County in the construction contract, express or implied. Unless that effect is actionable, the County could break its contract with Briscoe with impunity and hide under the basket of discretionary function. This would be intolerable.

In conclusion, while Briscoe cannot in this action reach the manner in which the County exercised, or failed to exercise, discretionary function, in the particulars set forth supra, Briscoe can hold the County fully accountable for its contractual promises, express or implied. The motions to dismiss paragraphs 23(a), (b), (d), (e), (f), (g), (h) and (i) of the Third Count are denied.

### 2. *The Eighth Count of the Amended Complaint*

 In this count, Briscoe complains first that the manner in which the County exercised, or failed to exercise, its discretionary functions was fraudulent and seeks exemplary or punitive damages. This, plaintiff may not do. The manner of exercise or failure to exercise the discretionary function is exempt and not actionable. But Briscoe also complains in this count of the effect of, or result of, or product of, the exercise or failure to exercise discretionary functions upon it and upon its performance

of the construction contract and is in itself actionable.

Since this Eighth Count is ordered stricken infra for other reasons, suffice it to say here that any evidence that supports paragraphs 40–44, inclusive, of this Eighth Count may be received in support of paragraphs 23(d), (e), (f) and (i) of the Third Count to the extent that such evidence does in fact go to show breach of contract or breach of implied warranty.

### (B) *Limitations on Award of Damages in Tort*

 In its Fifth Count and Seventh Count, Briscoe appears to have alleged tortious breach of contract and tortious breach of implied warranty and seeks damages against the County.

In its Sixth Count, Briscoe appears to seek punitive damages for tortious breach of contract and tortious breach of implied warranty against the County.

In its Eighth Count, Briscoe appears to seek punitive damages for the fraudulent and tortious breach of contract and breach of implied warranty by the County.

NRS 41.035 reads in pertinent part:

An award for damages in an action sounding in tort brought under NRS 41.-031 or against ... any political subdivision ... of the state ... may not exceed the sum of $50,000 ... An award may not include any amount as exemplary or punitive damages.

This limitation applies to the Fifth Count, Sixth Count, Seventh Count and Eighth Count.

Any recovery Briscoe could obtain for the torts alleged in Counts Five and Seven are limited to $50,000.

Briscoe may not recover punitive or exemplary damages for the torts alleged in the Sixth and Eighth Counts.

Although it appears that Briscoe does not seek punitive damages for breach of contract and breach of implied warranty but only for the tortious breach of contract and breach of implied warranty, if punitive or exemplary damages were sought for

breach of contract and breach of implied warranty, NRS 42.010 would bar the same. That statute (cases in which exemplary or punitive damages may be awarded) excludes breaches of obligations arising from contract. The Sixth and Eighth Counts are stricken.

## III. INDEMNITY CLAIM

(Seventh Count, paragraph 38(d))

 Briscoe may not seek indemnity from the County. The contract requires Briscoe to indemnify the County against the subcontractor for breach of contract claims. See 712, General Conditions.

## IV. FIFTEENTH COUNT—CONSPIRACY

 The Fifteenth Count charges that the County and others conspired against Briscoe. The others, private parties, named as coconspirators, have all been dismissed. The noncontracting county defendants are dismissed by this decision and order. Clark County is the only remaining defendant charged as conspirator and must be and is hereby dismissed. It cannot conspire against itself. Further, under Nevada law political subdivisions of the state are legally incapable of entering into a conspiracy.

## V. PRESENTMENT OF CLAIMS STATUTES

 Under Nevada law, Briscoe must plead and prove that it presented its claims to the County within the time frame allowed by the applicable presentment of claims statutes. Such presentment is a condition precedent to suit. Briscoe is wrong in asserting that failure to comply with the presentment of claims statutes is an affirmative defense, that the County must plead.

In 1980 when Briscoe commenced this action and asserted its breach of contract claims in its counterclaim in reply, NRS 41.036 (later amended 1981 Stats. p. 1885 and 1983 Stats. p. 103) provided that any claim against any political subdivision in

the state must be presented to the proper authority within six months from the time the cause of action accrued. The 1983 amendment removed the presentment requirement.

In 1980 NRS 244.245 (later amended 1981 Stats. p. 1887) provided that no person shall sue a county in any case for any demand unless he shall first present his claim or demand to the Board of County Commissioners. The 1981 amendment removed this presentment requirement.

In 1980 NRS 244.250 provided, and still provides:

1. All unaudited claims or accounts against any county shall be presented to the board of county commissioners within 6 months from the time such claims or accounts become due or payable.

2. No claim or account against any county shall be audited, allowed or paid by the board of county commissioners, or any other officer of the county, unless the provisions of subsection 1 are strictly complied with.

Whether it be said that Briscoe's breach of contract and other claims accrued before its complaint and its counterclaim in reply were filed in 1980 or thereafter, one Nevada presentment of claim statute was in effect from 1980 to date and that is NRS 244.250. Thus, there is no need to consider NRS 41.036 and NRS 244.245. From the record, it appears clear and is implicitly admitted by Briscoe that Briscoe did not formally present any of the claims alleged in its amended complaint to the Board of County Commissioners of Clark County, Nevada, at any time and certainly not within six months of the time such causes of action accrued, as NRS 244.250 requires.

This Court holds that NRS 244.250 is by its terms applicable to Briscoe's claims in this case and that it was not formally complied with by Briscoe before or after this action was commenced. The County seeks an order dismissing all of Briscoe's claims because of such noncompliance.

In *Turner v. Staggs*, 89 Nev. 230, 510 P.2d 879 (1973), the Nevada Supreme Court

held that the notice of claim requirements found in statutes requiring presentment of claims against the County within six months, as a condition precedent to bringing an action thereon, as applied to governmental torts, denied due process and equal protection under the Fourteenth Amendment to the Constitution of the United States.

In *L–M Architects, Inc. v. Sparks*, 100 Nev. 334, 683 P.2d 11 (1984), the City of Sparks refused to pay *L–M Architects*, presumably for architectural services rendered the City because *L–M* did not comply with NRS 268.020, which reads:

"1. All demands and accounts against any incorporated city in this state, must be presented to the city council of the city, in writing, within 6 months from the time the demands or accounts became due.

"....

"3. No demand or account against any incorporated city in this state may be audited, considered, allowed or paid by the city council or any other officer or officers of the incorporated city unless the provisions of subsection 1 are strictly complied with."

It is noted that NRS 268.020 and NRS 244.250 are nearly identical. *L–M Architects* claimed that NRS 268.020 was unconstitutional, violating the due process and equal protection clauses of the Nevada Constitution. The Nevada Supreme Court refused to apply *Turner v. Staggs* to a contract case and said that it was unwilling to invalidate the presentment of claims statutes in contract cases, *Turner* being limited to tort cases. The Court states, in part:

Individuals or corporations that voluntarily contract with governmental units assume the burden of complying with its procedures for satisfying claims. In this regard a claim statute does not, as was the case in *Turner*, amount to a trap for the unwary. The statute is properly applicable in this case.

In *State of Nevada v. Capital Convalescent Center, Inc.*, 92 Nev. 147, 547 P.2d 677 (1976), the Court, relative to presentment of claims, states at pp. 151 and 152, 547 P.2d 677:

1. First State claims that the district court lacked subject matter jurisdiction in the case, because Convalescent failed to comply with NRS 41.036 and NRS 353.085. We do not believe that the aforementioned statutes have any application in the instant case. Here, State initiated the action against Convalescent, and Convalescent filed a compulsory counterclaim. NRCP 13(a), (c). It would be anomalous to hold that a defendant, in court in an action he did not bring, is required to plead a counterclaim against the State because it is compulsory under Rule 13(a), but once plead, his counterclaim is subject to dismissal on the ground that he had not, before being sued, taken affirmative action as set forth in NRS 41.036, *supra*. Such a conclusion is consistent with the purpose of the statute, which is to prevent the State, a county, or a city from being surprised by claims it has not had time to consider administratively. As long as the same transaction or occurrence is involved, surprise is minimized. Cf. *Frederick v. United States*, 386 F.2d 481 (5th Cir. 1967). The district court did have jurisdiction to entertain Convalescent's counterclaim.

In *Alper v. Clark County*, 93 Nev. 569, 571 P.2d 810 (1977), the Supreme Court held that the presentment of claims statutes should not be construed to apply to actions for inverse condemnation for to do so would deny due process, a constitutionally guaranteed right under the Fourteenth Amendment. The Court further held that since inverse condemnation is an action to vindicate a right created and guaranteed by the Fifth Amendment to the United States Constitution, an application of the presentment of claims statutes would allow the state to impose preconditions to suit on a federally created and protected right.

In *Metropolitan Water District v. State of Nevada*, 99 Nev. 506, 509, 665 P.2d 262 (1983) the Court stated:

We have previously held that a county's claims statutes should not apply where to do so would deny property owners due process rights. *See Alper v. Clark County*, 93 Nev. 569, 571 P.2d 810 (1977), *cert. denied*, 436 U.S. 905 [98 S.Ct. 2235, 56 L.Ed.2d 402] (1978). Similar reasoning requires that the three month statutory period of limitations specified in NRS 361.420(3) should not be held to apply where to do so would deprive the Water District of a fundamental constitutional right, that of equal protection under the law.

Briscoe seeks to come within the rule of *Convalescent,* supra, arguing that its counterclaim in reply, filed September 15, 1980, was compulsory since the County had alleged a breach of contract against Briscoe in its answer and counterclaim, filed on July 31, 1980.

Since the Federal Rules of Civil Procedure do not provide for a pleading called counterclaim in reply, the filing of the same setting forth Briscoe's breach of contract claim against the County in response to the County's breach of contract claim against Briscoe, cannot be said to be compulsory. The proper way was what Briscoe eventually did, move for leave to file an amended complaint setting forth Briscoe's breach of contract claims against the County. Furthermore, the breach of contract claims in Briscoe's counterclaim in reply are substantially different than those set forth in the amended complaint.

It is noted that in *Convalescent,* the Supreme Court of Nevada stated that the purpose for the presentment of claims statutes was to prevent the governmental unit from being surprised by claims it had not had time to consider administratively.

Justice Thompson, dissenting for other reasons, in *Turner* said, at page 241 of 89 Nev. 230, 510 P.2d 879:

The purpose of a claim statute is to enable the govermental agency to make an early investigation of the claim, of the claimant, and to marshal evidence promptly at a time when it is possible to do so. *City of Reno v. Fields,* 69 Nev.

300, 250 P.2d 140 (1952); *Brown v. Board of Trustees, Etc.* [303 N.Y. 484], 104 N.E.2d 866 (N.Y.1952).

Briscoe argues that the filing of the counterclaim in reply charging the County with breach of contract, the numerous disputes between Briscoe and the County representatives memorialized in correspondence, and the many telephone calls to County representatives and meetings with such representatives and with County Commissioners, all fulfilled the purpose of presentment of claims statutes and amounts of substantial compliance with such statutes. This Court agrees that the purpose of the statutes as set forth by the Supreme Court of Nevada have been fulfilled in this case and that Briscoe has substantially complied with NRS 244.250, although Briscoe's claims were not formally presented to the Board of County Commissioners. But is substantial compliance enough? The County says no, that formal compliance is required and that Briscoe, having failed to do so, should be thrown out of court.

Of course this Court must apply Nevada case and statutory law. With the exception of the *L–M Architects* case, the Nevada Supreme Court in the cases cited above has found cause to excuse strict compliance with presentment of claims statutes. Also, in many of the cases from other jurisdictions cited by Briscoe in its briefs, these courts have found a way around presentment of claims statutes.

Were this Court free to follow its own view, it would be inclined to say that once the County entered into the contract with Briscoe to build the waste water treatment plant, the contractor could sue for breach of contract and need not comply with the presentment of claims statutes; that by so contracting, the County waives compliance with presentment statutes although, by its terms, the contract does not say so; that the County should be estopped to claim noncompliance since it had notice of the substantial compliance as mentioned aforesaid. Were the Court free to chart its own course, it would say that despite the *L–M*

*Architects* case, the application of claims statutes here would likely deny due process and equal protection under the Fourteenth Amendment to the Constitution of the United States and this Court would, if it had a free hand, probably apply *Turner* to contract cases. It would seem that Briscoe is correct when it argues in its brief (Document #791, p. 38, lines 12–28, inclusive):

"Applying the reasoning of the foregoing cases to this case, it is clear that the notice of claim statute held unconstitutional in *Turner v. Stages,* supra, as applied to governmental torts, unjustifiably discriminates against persons with contract claims against a county, in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

"The notice of claim statutes deny to persons damaged by governmental misfeasance or malfeasance in the performance of contractual obligations the right to recover unless they provide the government with notice within a short time after they occur. This prerequisite to contract lability [sic] has no counterpart in actions between private parties. The statutes thus create two classes of contracting parties, governmental and non-governmental, and grant the one a procedural advantage not available to the other. Concommitantly, they produce two classes of persons damaged by breaches of promise, and place a substantial burden on the right to bring an action on one of them."

This Court does not wish to exalt technical form over substance and throw Briscoe out of court. Whether unconstitutionality, waiver, estoppel, substantial compliance or some other grounds are assigned as the reason, it seems it would be unconscionable to dismiss Briscoe's claims for such technical noncompliance.

The motion to dismiss for Briscoe's failure to comply with NRS 244.250 is denied without prejudice to reconsidering the same at the close of Briscoe's case in chief or at the close of all evidence. All evidence that supports the arguments of unconstitutionality, waiver, estoppel, and substantial compliance should be adduced by Briscoe in its case in chief and thereafter evidence contra thereto offered by the County. The constitutional legal and equitable issues should be fully researched by counsel for both parties and further briefs submitted as motions for directed verdict or responses in opposition thereto.

In all other respects, the motion to dismiss is denied.