**FRANK BRISCOE COMPANY, INC.,**
**Plaintiff–Appellee,**

v.

**CLARK COUNTY, Defendant–Appellant.**

No. 87–2230.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 17, 1988.

Decided Sept. 15, 1988.

William N. Alsup, San Francisco, Cal., for defendant-appellant.

Morton R. Galane, Las Vegas, Nev., for plaintiff-appellee.

Before SCHROEDER, FLETCHER and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Clark County, Nevada appeals a jury verdict in favor of Frank Briscoe Co., a New Jersey corporation. Briscoe filed a diversity action in the District of Nevada in connection with a contract to construct a wastewater treatment plant. The jury awarded Briscoe $16.24 million in damages against the County, which was reduced by $275,000 upon Briscoe's acceptance of a remittitur.

The County contends on appeal that Nevada's notice-of-claim statute barred the damage award; a continuance during the

trial was prejudicial; the jury was instructed improperly on contract warranties; special interrogatories formulated by the district court were ambiguous and confusing; and unrebutted, argumentative reference charts prepared by Briscoe improperly were submitted to the jury. We affirm.

## I.

In September 1976, the County requested bids for construction of an advanced wastewater treatment plant. Nevada Environmental Consultants (NECON), an engineering joint venture, provided design services to the County for the project, including the plans, specifications, and bidding documents used by the contractors in formulating their bids. Briscoe submitted a $52.3 million bid and was awarded the contract in March 1977. Pursuant to the design specifications, Briscoe's contract with the County mandated completion of the plant by June 29, 1980, a period of 1,200 days.

Morrison–Knudsen Co., a construction manager, served as the County's project representative. NECON's contract to provide engineering services was terminated by the County in October 1977, about seven months after construction had begun. H.K. Ferguson Co. provided interim engineering services on the project until February 1978, when URS Forrest & Cotton was named successor engineer. These firms did not have access to NECON or its design analysis or calculations.

A number of disputes arose during plant construction. The County contends that these disputes concerned the quality of Briscoe's performance and the impact of certain contract requirements on Briscoe's time and cost of performance. Briscoe insists that the County failed to provide engineering services as required by the contract and that the successor engineers, endeavoring to correct NECON's errors and omissions, compounded these problems by shifting responsibility for redesigning the plant to Briscoe under the guise of contract interpretation.

Pursuant to an amending provision in the contract, Briscoe submitted numerous written requests to Morrison–Knudsen for time and price adjustments. Briscoe contends that with few exceptions, the County refused to accept the blame for construction delays or otherwise recognize the merits of Briscoe's protests. The County notes that 217 change orders were approved, extending the completion date 210 days and increasing the contract price by more than $675,000.

Faced with lengthy delays and huge cost overruns, Briscoe filed this action in May 1980 in the District of Nevada against the County, Morrison–Knudsen, both successor engineers, and nine other defendants. Briscoe sought specific performance of the contract and injunctive and declaratory relief against the County, but did not seek damages. In July, the County filed a breach of contract counterclaim against Briscoe. In September 1980, Briscoe responded by filing "counterclaims in reply" against the County for breaches of contract and warranty, seeking damages "in an amount to be established at the trial."

Briscoe continued construction of the treatment plant while its suit was pending. The project was completed in April 1982, fifteen months after the adjusted contract deadline. In September 1983, three years after filing its counterclaims in reply, Briscoe submitted in connection with the litigation a summary of damages totaling $49 million. Briscoe filed an amended complaint in April 1984 which requested $70 million each in compensatory and punitive damages. Two weeks later, the County moved to dismiss ten counts of the amended complaint.

The jury trial began on November 13, 1985 and was adjourned for the holidays between December 19, 1985 and January 6, 1986. The recess was extended until March 3 by District Judge Roger D. Foley *sua sponte* in a minute order. Judge Foley attached to the order a letter from the Administrative Office of the United States Courts which advised senior district judges wishing to avoid having FICA taxes deducted from their salaries "to cease performing judicial duties during the first 60 to 90 days of 1986" in light of pending

legislation. The County moved for a mistrial, claiming that the continuance, extended again until March 11, was prejudicial. The motion was denied.

The district court ruled on the County's two-year old motion to dismiss on March 3, dismissing each of the defendants except the County and striking portions of the amended complaint. *Frank Briscoe Co. v. County of Clark*, 643 F.Supp. 93 (D.Nev. 1986). The trial was then resumed, and lasted a total of eighty-seven days. The parties presented more than 2,200 exhibits and nineteen expert witnesses testified.

The County was granted a partial directed verdict in July 1986, leaving for jury consideration thirteen claims from a single count of Briscoe's amended complaint. The court formulated ten special interrogatories from these claims, requiring the jury to determine specifically whether the County breached the contract and caused Briscoe to delay completion of the treatment plant by:

(1) terminating NECON as project engineer;

(2) failing to provide essential engineering services;

(3) dividing the project into four segments;

(4) requiring segmentation of progress scheduling;

(5) failing to review pre-bid submittals;

(6) submitting defective plans and specifications;

(7) failing to timely process change orders;

(8) disrupting and interfering work scheduling;

(9) failing to timely approve shop drawings; and

(10) interfering with work performance.

The jury found for Briscoe on eight of the ten interrogatories and determined that the County was responsible for 612 of the 667 days the project was delayed.

The interrogatories did not ask for a particular damage value for each day of delay. The jury instead awarded Briscoe a general verdict of $16.24 million in damages. The court denied the County's motion for judgment notwithstanding the verdict or a new trial when Briscoe accepted a $275,000 remittitur. Judge Foley determined that the remittitur was necessary to offset an erroneous jury instruction regarding the County's counterclaim for liquidated damages under the contract for delays caused by Briscoe.[1]

## II.

### A. Notice–of–Claim Statute

█ The County initially contends that this case should not have progressed to trial because Briscoe failed to comply with Nevada's notice-of-claim statute. It provides:

1. All unaudited claims or accounts against any county shall be presented to the board of county commissioners within 6 months from the time such claims or accounts become due or payable.

2. No claim or account against any county shall be ... paid by the board of county commissioners, or any other officer of the county, unless the provisions of subsection 1 are strictly complied with.

Nev.Rev.Stat. § 244.250 (1985).

In his decision and order denying the County's motion to dismiss, Judge Foley found that Briscoe had not formally presented its claim to the Board of County Commissioners of Clark County. *Briscoe*, 643 F.Supp. 93, 100. He nevertheless concluded that the statute did not bar Briscoe's suit:

This Court does not wish to exalt technical form over substance and throw Briscoe out of court. Whether unconstitutionality, waiver, estoppel, substantial compliance or some other grounds are assigned as the reason, it seems it would be unconscionable to dismiss Briscoe's claims for such technical noncompliance.

---

1. The contract provided for liquidated damages of $5,000 per day for delays in substantial completion of the plant. In its answers to the special interrogatories, the jury found that the County was *not* responsible for 55 of the 667 days the project was delayed.

*Id.* at 103. Briscoe does not challenge the constitutionality of section 244.250 on appeal, but contends that strict compliance with the statute was excused in this case by waiver, estoppel, or substantial compliance.

We may affirm the district court's decision on any ground finding support in the record. *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir.1987), *cert. denied,* ——— U.S. ———, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988). We believe that a waiver rule adopted in 1976 by the Supreme Court of Nevada for compulsory counterclaims similarly exempts Briscoe's counterclaims in reply from the operation of the statute. We therefore do not address Briscoe's other excuses for noncompliance.

The interpretation of Nevada's notice-of-claim statute is a question of state law reviewed de novo. *Olympic Sports Prods., Inc. v. Universal Athletic Sales Co.,* 760 F.2d 910, 912 (9th Cir.1985), *cert. denied,* 474 U.S. 1060, 106 S.Ct. 804, 88 L.Ed.2d 780 (1986). The decisions of a state's highest court are binding on a federal court sitting in diversity. *Id.* at 913. In the absence of controlling state law, however, the court "must use its own best judgment in predicting how the state's highest court would decide the case." *Takahashi v. Loomis Armored Car Serv.,* 625 F.2d 314, 316 (9th Cir.1980).

In *State v. Capital Convalescent Center,* 92 Nev. 147, 547 P.2d 677 (1976), the Supreme Court of Nevada ruled that a defendant's failure to comply with an analogous notice statute did not bar it from filing a compulsory counterclaim against the state:

> It would be anomalous to hold that a defendant, in court in an action he did not bring, is required to plead a counterclaim against the State because it is compulsory under Rule 13(a), but once pled, his counterclaim is subject to dismissal on the ground that he had not, before being sued, taken affirmative action [under the notice statute]. Such a conclusion is consistent with the purpose of the statute, which is to prevent the State, a county, or a city from being surprised by claims it has not had time to consider administratively. As long as the same transaction or occurrence is involved, surprise is minimized.

92 Nev. at 151–52, 547 P.2d at 680.

Briscoe argues that the *Capital Convalescent* rule should be read to include counterclaims in reply filed by plaintiffs. We believe that such an interpretation is consistent with the policy behind *Capital Convalescent.*

The notice statute was inapplicable to Briscoe's original complaint because it sought from the County only equitable relief. *See Hart v. City of Las Vegas,* 73 Nev. 29, 31, 307 P.2d 617, 618 (1957). Briscoe requested specific performance on the contract and a judgment declaring that it would not be responsible if the plant did not meet the specified performance requirements.

The County's subsequent counterclaim for damages for breach of contract was compulsory under Fed.R.Civ.P. 13(a) because it arose out of the same transaction or occurrence that was the subject matter of Briscoe's claim. *Seattle Totems Hockey Club, Inc. v. National Hockey League,* 652 F.2d 852, 854 (9th Cir.1981), *cert. denied,* 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1313 (1982). Briscoe, which could not have sued the County directly for damages without complying with the notice statute, then filed its counterclaims in reply. Although this pleading is not expressly authorized by the Federal Rules, it may be used where, as here, the claims are compulsory. *See Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1525 (9th Cir.1985). Briscoe later amended its complaint to include claims for damages against the County.

The County contends that the *Capital Convalescent* waiver rule should be limited to cases where a defendant is haled into court by the government. It states that the policy behind the rule is to prevent a government entity, subject to a normal statute of limitations, from filing suits with impunity after the expiration of the usually shorter notice period. The County suggests that a contractor-defendant which either was unaware of its claim or had cho-

sen not to sue could unjustifiably be injured in such a situation. Adopting the County's theory in this case would, of course, bar Briscoe's breach of contract action, maintain the County's counterclaim, and result in exactly this type of injustice.

Briscoe reasons that the purpose of the notice statute is to prevent the County "from being surprised by claims." *Capital Convalescent,* 92 Nev. at 152, 547 P.2d at 680. When the County initiates a monetary damage claim, it does not matter which party originally files suit. As noted by the Nevada court, surprise is minimized if the same transaction or occurrence is involved. *Id.* Briscoe's view is the better one under Nevada law. We conclude that compliance with section 244.250 was not required in this case.

### B. Continuance and Motion for Mistrial

■ The County argues that the district court erred by adjourning the jury trial for twelve weeks between December 1985 and March 1986 and by refusing to grant a mistrial. A decision whether to order a continuance is reviewed for abuse of discretion. *Rios–Berrios v. INS,* 776 F.2d 859, 862 (9th Cir.1985). "Experience tells us that in most situations we should defer to the trial judge's decision in granting or denying the continuance." *Id.* Similarly, because of the unique ability of the district court to estimate the needs of a particular case, the denial of a mistrial will be upheld absent a clear abuse of discretion. *United States v. Smith,* 790 F.2d 789, 795 (9th Cir.1986).

The County's motion relied on the affidavit of Dr. Elizabeth Loftus, a psychology consultant, which stated:

I believe the recess in the trial is likely to have helped jurors to have solidified whatever pro-plaintiff orientation they had developed by hearing a major portion of the plaintiff's case, and I believe the process of refreshing the jurors' memories, which will inevitably occur, further disadvantages the defendant.

In denying the request for a mistrial, the court stated that the twenty days of trial held prior to the continuance did not constitute a principal part of Briscoe's case:

I must reject out of hand Dr. Loftus' proposition as applied here. Insofar as to the delay is concerned, it was clearly a gain for the defendant and a loss for the plaintiff.

Up to the Christmas recess the jury could only have had vague and inconclusive notions about the plaintiff's claims. The plaintiff's evidence is too complex and much too technical to have been digested by the jury in the first twenty days.

Although continuing the trial nine additional weeks after the holiday recess to avoid FICA deductions was somewhat unusual, we conclude that the district court did not abuse its discretion. The County has offered no evidence to support the proposition that the jury heard "a major portion of the plaintiff's case" prior to adjournment. This fact was essential to Dr. Loftus' theory.[2] Cases cited by the County dealing with prejudice to plaintiffs from midtrial continuances also are unavailing to indicate that such a delay prejudices defendants. The denial of the motion for a mistrial is affirmed.

### C. Time of Completion Warranty Instruction

■ The County's objection on this issue is twofold. It first submits that the court incorrectly instructed the jury that the construction contract "implies a warranty by the County that Briscoe, if it complies with the contract documents, would be able to complete the work within the contemplated period of time." The County also challenges Judge Foley's rejection of a proposed instruction stating that Briscoe, "by submitting its bid and entering into the contract, warrants that it can perform the work in the contemplated period of time and complete the project by the due date."

■ Jury instructions need not be perfect to withstand challenge on appeal. Our inquiry is whether, considering the charge as a whole, the district court's instructions

---

**2.** We express no opinion on the validity of Dr. Loftus' theory.

fairly and adequately covered the issues presented, correctly stated the law, and were not misleading. *Coursen v. A.H. Robins Co.,* 764 F.2d 1329, 1337, *modified,* 773 F.2d 1049 (9th Cir.1985). In a civil trial, erroneous instructions "need only be more probably than not harmless." *Id.*

The instruction given by the court relates to a duty imposed by law on the owner of a project who provides work instructions and specifications. This implied warranty was established by the Supreme Court in *United States v. Spearin,* 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918). Plaintiff there sought payment on a contract to build a Navy dry-dock. The project specifications required Spearin to relocate an adjacent sewer, which burst during the construction. The Court found that the government,

> [by] the insertion of the articles prescribing the character, dimensions and location of the sewer imported a warranty that, if the specifications were complied with, the sewer would be adequate. This implied warranty is not overcome by the general clauses requiring the contractor, to examine the site, to check up the plans, and to assume responsibility for the work until completion and acceptance.

*Id.* at 137, 39 S.Ct. at 61 (footnotes omitted).

The wording of the time of completion warranty instruction challenged by the County closely tracks language in two opinions from the former United States Court of Claims construing *Spearin. See Wunderlich Contracting Co. v. United States,* 351 F.2d 956, 964 (Ct.Cl.1965); *Laburnum Constr. Corp. v. United States,* 325 F.2d 451, 457 (Ct.Cl.1963). Similarly, in *J.D. Hedin Constr. Co. v. United States,* 347 F.2d 235, 241 (Ct.Cl.1965), the court held that by preparing a project's specifications, the government implicitly warranted "that if the specifications are complied with, satisfactory performance will result." *Cf. American Ship Bldg. Co. v. United States,* 654 F.2d 75, 78–79 (Ct.Cl.1981) (no time of completion warranty where contractor failed to present any evidence regarding cause of delay).

The County does not question the continuing vitality of the *Spearin* doctrine, but argues that the court in this case imposed an independent warranty of completion by a particular date on the County irrespective of whether it supplied faulty specifications. This is simply incorrect. None of the special interrogatories submitted to the jury can be read to impose liability for work delays absent specific acts or omissions by the County causing the delay. We reject the notion that the County was subjected to "strict liability" for delays in the plant's completion.

The court's instruction correctly stated the law and directly related to an issue in the case. The sixth interrogatory asked the jury whether the County breached the contract by submitting "defective, inadequate and incomplete" contract documents and specifications. The time of completion instruction, requiring Briscoe's compliance with the contract documents, and the instruction which followed, stating that the County warranted that the documents were correct, adequate, and suitable for their intended purpose, were crucial for the jury to accurately evaluate whether the parties performed their duties under the contract.

The County makes only passing reference to its second claim, that the court should have instructed the jury that Briscoe, by entering into the contract, warranted that it could complete the project within the specified time. Although the County has not argued the merits of this issue, our review of the contract's scheduling provisions indicates that such a reciprocal instruction should have been given. We nevertheless conclude that the court's error was harmless for at least two reasons.

First, an instruction roughly equivalent in substance to the one requested by the County was given by the court: "Briscoe, having undertaken to construct the [plant] ... is under a duty to the owner by virtue of the relationship created by the general contract to see to it that the job is performed in a workmanlike manner, according to the contract plans and specifications." The contract documents, of course, included deadlines for completion of the

project. Second, in its answers to the special interrogatories, the jury determined that the County was responsible for 612 of the 667 days Briscoe was delayed in completing the project. A time of completion warranty by Briscoe would have been excused to the extent the delay was caused by the County. The $275,000 remittitur ordered by the court compensated the County for the additional fifty-five days of delay.

## D. Evidence Reference Charts

■ The County also contends that the district court improperly submitted to the jury unrebutted, argumentative evidence reference charts produced by Briscoe. A decision whether to allow the jury to use charts, indexes, or other visual aids which organize or summarize evidence admitted at trial is reviewed for abuse of discretion. *See Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 431 (5th Cir.1985). We cannot simply substitute our judgment for that of the district court to reverse under this standard, but must be left with the definite and firm conviction that the court committed a clear error of judgment in reaching its conclusion after weighing the relevant factors. *See Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir.1985).

In light of the length and complexity of this case, the court reasonably was concerned about the jury's ability to organize and analyze the evidence. Judge Foley instructed Briscoe at the close of its case-in-chief to prepare charts of the various breaches of contract underlying the major delay-causing events it claimed were caused by the County. The charts were to designate the witnesses, trial transcript citations, and exhibit numbers supporting each alleged breach, and list the delay-causing event that resulted. The County also was advised to consider preparing charts of its claims and defenses.

Judge Foley anticipated that the charts would assist him in considering directed verdict motions, help the jury during closing arguments, and serve as master topical indexes for the transcripts and exhibits used by the jury during deliberations.

Contrary to the court's intentions and instructions, however, neither party submitted its charts until after closing arguments and jury instructions were completed.

Briscoe submitted individual charts corresponding to the ten contract breaches found in the interrogatories and listing consequences allegedly flowing from that breach. The charts served as indexes to binders containing references to trial exhibits and witness testimony. The actual documents and transcripts were contained in separate binders. The County objected to the charts before the jury began deliberations on the grounds that Briscoe had never attempted to tie specific consequences to particular contract breaches during the trial and that the charts constituted unrebutted argument.

Judge Foley acknowledged that the County's arguments were "probably right," but overruled the objection because he believed that the jury had a strong need for an index of the voluminous trial materials. In denying the County's motion for judgment notwithstanding the verdict or a new trial, the court stated:

> [T]hese charts of Briscoe's did not accomplish what the Court wanted them to do. They did not clearly make the connection between each claimed breach of contract and each delay-causing event. Rather, in a shotgun type approach Briscoe's counsel listed a plethora of consequences flowing from each of the 10 claimed breaches of contract, stating that many of the same consequences flowed from different breaches.... [T]he jury was not assisted as the court had hoped and could not have intelligently relied upon the charts at all. It appears obvious the jury drew its own inferences in connecting the breaches of contract with the delay-causing events.

The district court thus concluded that because Briscoe failed to take advantage of this questionable opportunity to clarify its case to the jury, any error committed in submitting the charts to the jury was harmless. We agree.

Ironically, the County's forceful arguments for reversal on this issue actually support Judge Foley's harmless error analysis. The linking of contract breaches and consequences in Briscoe's charts lacked any evidentiary basis. Most of the charts were repetitive and vague. Many were confusing. Others were "absurd." Even assuming that the court abused its discretion in permitting use of the charts, we are convinced that a reasonable jury simply could not have relied on them in reaching its verdict.

### E. Special Interrogatories

■ Following an eighty-seven day trial which spanned nearly nine months, Judge Foley had a difficult choice in determining how to present the case to the jury in a manner that would ensure a rational verdict based on comprehensive evidence. The court feared that a general verdict, favored by Briscoe, would encourage the jury to speculate. A special verdict proposed by the County, consisting of eighty-five detailed interrogatories, threatened confusion and also was rejected.

The court steered between this Scylla and Charybdis by submitting a general verdict and thirteen special interrogatories to the jury pursuant to Fed.R.Civ.P. 49(b). The first ten interrogatories were based on specific allegations of breach in Briscoe's amended complaint.[3] The jury was asked in each instance whether (1) the County breached the contract; (2) delay resulted from the breach; (3) the delay was entirely the County's fault; and (4) the delay prevented Briscoe from performing the contract on time. If the questions were answered "yes," the days of delay attributable to the breach were calculated. The jury also was instructed to render a general verdict of damages to compensate Briscoe for total days of delay found to be caused by the County.

The decision whether to submit a general verdict accompanied by special interrogatories is committed to the discretion of the trial court. Fed.R.Civ.P. 49(b); *Cancellier v. Federated Dept. Stores,* 672 F.2d 1312, 1317 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982). The County does not challenge the use of interrogatories in this case or claim that the jury's answers were inconsistent with each other or with the general verdict. It insists, however, that the interrogatories were duplicative and overlapping and resulted in an excessive award of damages to Briscoe.

The district court has broad discretion in determining the precise wording of the interrogatories as long as the issues are fairly presented. *Carvalho v. Raybestos–Manhattan, Inc.,* 794 F.2d 454, 455 (9th Cir.1986). A court nevertheless may abuse its discretion by submitting special interrogatories that are likely to mislead or confuse the jury or inaccurately state the issues. *See Cann v. Ford Motor Co.,* 658 F.2d 54, 58 (2d Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982).

The County argues that by characterizing some of the contract breaches in broad and vague terms, the court confused the jury and allowed it to count the same days of delay more than once. For example, in response to the first interrogatory, titled "Termination of NECON," the jury found that completion of the plant was delayed fifteen days because the successor engineers "were deprived of access to NECON's design and other calculations, drafts and preliminary designs." Under the second interrogatory, "Engineering Services," the jury determined that the County was responsible for fifteen days of delay for failing and refusing "to provide essential engineering services during construction." According to the County, the first interrogatory is simply a subset of the second.

Similar criticism is directed toward the eighth and tenth interrogatories. Number eight, titled "Disruption of Scheduling," asked the jury whether the County "delayed, disrupted and interfered with the

---

**3.** Interrogatories 11 and 12 related to the County's counterclaim for liquidated damages. Number 13 requested the jury to determine the date from which Briscoe was entitled to prejudgment interest.

performance of work." Number ten, "Interference with Work," described an alleged breach as follows: "Briscoe claims that in addition to interfering with scheduling, the County unreasonably interfered with the performance of its work." The jury found 100 days of delay under the eighth interrogatory and 115 under the tenth.

We recognize, as Judge Foley did, that some of the interrogatories were poorly drafted and were susceptible of misconstruction and overlap. We conclude, however, that a reasonable jury would not have been misled. Absent some evidence to the contrary, we must assume that the jury properly discharged its duties and followed the district court's instructions to consider the interrogatories "one by one, one at a time" and to determine "the number of days delay that flows from the particular breach of contract." *See Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 485, 53 S.Ct. 252, 255–56, 77 L.Ed. 439 (1933); *Cf. Cann*, 658 F.2d at 59.

A reasonable jury could distinguish between delays resulting from the lack of access to NECON's designs and calculations and from the failure to provide other essential engineering services during construction. Likewise, although interrogatories eight and ten are similar, the title of number eight refers to the disruption of scheduling and the text of number ten excludes delays related to scheduling.

Finally, we conclude that the jury's original damages award of $16.24 million, based on the total days of delay found to be attributable to the County's breaches of contract, is supported by substantial evidence. The award, while large, was less than the uncontroverted out-of-pocket loss sustained by Briscoe during construction of the plant. When the jury is properly instructed and presented with substantial evidence, its verdict must stand. *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir. 1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). Any error in instructing the jury regarding the County's

counterclaim was remedied by Briscoe's acceptance of the remittitur.

## CONCLUSION

Briscoe's counterclaims in reply for damages were compulsory to the County's breach of contract counterclaim. We believe that the Supreme Court of Nevada would conclude that the state's notice-of-claim statute is waived in such cases. Briscoe's suit therefore was not barred.

We also hold that the district court did not abuse its discretion by granting a continuance during the trial, that the jury was adequately instructed regarding contract warranties, and that it is more likely than not that the special interrogatories submitted did not confuse the jury. Finally, any error resulting from the court's use of evidence reference charts was harmless.

The district court's judgment is AFFIRMED.