CITY OF LAS VEGAS, NEVADA, AND NEVADA POWER COMPANY, APPELLANTS, v. CRAGIN INDUSTRIES, INC., A NEVADA CORPORATION, ON BEHALF OF ITSELF AND ALL OTHER TAXPAYERS OF THE CITY OF LAS VEGAS, COUNTY OF CLARK, STATE OF NEVADA; AND CRAGIN INDUSTRIES, INC., A NEVADA CORPORATION, ON BEHALF OF ITSELF AND ALL OTHER PROPERTY OWNERS WITH PROPERTY ABUTTING ON AND ALONG CHARLESTON BOULEVARD BETWEEN UPLAND BOULEVARD AND DESERT LANE IN LAS VEGAS, CLARK COUNTY, NEVADA; AND CRAGIN INDUSTRIES, INC., A NEVADA CORPORATION, ON BEHALF OF ITSELF AND ALL OTHER PROPERTY OWNERS OF ASSESSMENT UNIT NO. 4 AS CONTAINED IN LAS VEGAS, NEVADA, SPECIAL ASSESSMENT DISTRICT NO. 476 PURPORTEDLY CREATED BY LAS VEGAS, NEVADA, ORDINANCE NO. 1321, RESPONDENTS.

No. 6165

December 30, 1970 478 P.2d 585

*Samuel P. Cowley, Jr., V. Gray Gubler,* Attorneys for Nevada Power Company; *George F. Ogilvie, Jr.,* Attorney for City of Las Vegas, of Las Vegas, for Appellants.

*Carl J. Christensen,* of Las Vegas, for Respondents.

## OPINION

By the Court, BATJER, J.:

On May 3, 1929, the city of Las Vegas and the Southern Nevada Power Company, predecessor of Nevada Power Company, one of the appellants, entered into a franchise agreement which granted to the power company the right to locate its electric poles and wires within the city. The term of the franchise was for 50 years and it was in effect at the time this litigation arose.

On March 20, 1968, the board of commissioners of the city of Las Vegas adopted Ordinance No. 1321, establishing seven assessment units to effectuate improvements in the designated localities. Notice of the proposed assessment districts had been published and hearings held. In compliance with NRS 271.-320(1), the commission implemented the plan for improvements after determining that less than a majority of landowners in Assessment Units 1, 2, 3, 4, 6, 7 and 8 had filed written or oral protests.

The plan for Unit 4 in Special Assessment District No. 476, the only area here involved, included the placement of mercury vapor luminaries on steel lighting standards with concrete bases and underground circuits.

Thereafter on March 5, 1969, the city and Nevada Power Company entered into a contractual agreement designated "Joint Ownership Agreement." Under the terms of that agreement the parties agreed that the power company would install extensions upon the top of the steel light poles and string electric wires therefrom. Each contracting party was to retain 50 percent ownership of the poles. The express purpose of this contractual agreement was to improve the appearance of the neighborhood adjacent to West Charleston Boulevard between Cashman Drive and Desert Lane, by combining city and power company facilities on one set of poles.

On April 10, 1969, Cragin Industries, Inc., filed suit for itself and on behalf of all taxpayers in the city; all property owners abutting West Charleston Boulevard, and on behalf of all property owners in Assessment Unit 4. The complaint sought a permanent injunction against the city and power company prohibiting the placement of electrical wires above ground; a declaration that the Joint Ownership Agreement was null, void, against public policy and contrary to Ordinance 1321 requiring underground circuits.

In the answers filed by the city and the power company they defended upon the grounds that the power company, had for 10 years previous to the litigation, maintained overhead electrical wires on the opposite side of the street and that the franchise agreement afforded them the right to place their wires in the contested location.

The city and the power company on one side and the respondents on the other moved for summary judgment. Both the city and the power company contended that there was no genuine issue as to any material fact to be tried.

Summary judgment was entered in favor of the respondents permanently enjoining the city and the power company from constructing or maintaining overhead electrical power lines along West Charleston Boulevard in Las Vegas, Clark County, Nevada; declaring the agreement between the appellants dated March 5, 1969, to be null, void, against public policy and of no force and effect, and allowing attorney fees in the amount of $1,500.[1] It is from this part of the judgment that the appeal is taken.

The appellants contend that the trial court was without jurisdiction to enter the summary judgment and that in any

---

[1] Although the respondents asked that Las Vegas Ordinance No. 1321 creating Las Vegas, Nevada, Special Assessment District No. 476 be declared null, void and of no force and effect, the district court decreed it to be lawful and valid.

event summary judgment was improperly granted because there remained genuine issues of fact to be litigated. However, the only real issue, before this court for consideration, is the validity of the agreement dated March 5, 1969, between the city and the power company authorizing the power company to install overhead wiring on extensions of steel light poles in Special Assessment District No. 476. The district court found the agreement to be null, void, against public policy and of no force and effect. We agree with the finding of the district court.

Because all the parties moved for summary judgment, the trial court was at liberty to find that the parties had conceded that there remained no material question of fact and that the case could be determined on a question of law. Although the trial court did not specifically find that there remained no genuine issue of fact, the appellants, in their motions for summary judgment both alleged that there is "no genuine issue as to any material fact" and they are now precluded from changing their position upon this appeal. Fox v. Johnson & Wimsatt, 127 F.2d 729 (U.S.App.D.C. 1942); Steiner v. United States, 36 F.Supp. 496 (D.C.D.C. 1941); Garrett Freightlines Inc. v. United States, 236 F.Supp. 594 (D.C. Idaho 1964).

The appellants' contention that the trial court was without jurisdiction to enter summary judgment in this case because the Public Service Commission of Nevada was vested with the original jurisdiction is also without merit. The appellants' reliance on NRS 704.250[2] and 704.780(1)(c)[3] (repealed by Chap. 501, Statutes of Nevada 1969), as well as their reliance on the cases cited in support of their contention is misplaced.

The power company's claims that the judgment of the trial court enjoining them from placing their electrical wires on the steel electric poles would affect their rates by forcing them

---

[2]704.250: "The commission is authorized and directed to prescribe the standards for the maintenance, use and operation of electric poles, wires, cables and appliances of all public utilities within the state engaged in the business of furnishing electric power, light and energy."

[3]NRS 704.780(1)(c): "1. The commission shall:
. . . :
"(c) Upon application by any person or persons either in writing or in person, make such further rules and regulations regarding the construction, maintenance and operation of the plants and devices used to generate and distribute electricity in this state as may appear necessary and reasonable to the commission."

to expend additional sums and therefore amounted to authorization of rate-making by ordinance. Any additional installation cost is so remote and indirect to rate-making that the power company's claim cannot reasonably be accepted by this court. Cf. York Water Co. v. City of York, 95 A. 396 (Penn. 1915). Although indirect costs may be appropriately considered by a public service commission in establishing reasonable rates for a utility, it does not follow that every action of a governmental subdivision which could conceivably cause additional costs to a utility amounts to an act of rate-making.

The Public Service Commission of Nevada has no inherent power. Its only source of power lies in constitutional and statutory provisions, and those provisions are to be strictly construed. The authorization and mandate of the legislature that the commission should prescribe standards for the maintenance, use and operation of electric poles, wires, cables, and appliances of all public utilities within the state engaged in the business of furnishing electric power, light and energy, or the authorization to make such further rules and regulations regarding the construction, maintenance and operation of the plants and devices used to generate and distribute electricity, encompasses the quantity and quality of service. Included in the quality of service would be broad safety standards. However, this statutory authorization and direction does not infringe upon a governmental subdivision's power to determine the reasonable location of plants, electric poles, wires, cables, devices and appliances of all public utilities.

Although "safety" is mentioned in the respondents' complaint, it is only in the nature of comment and the question of safety has not been placed in issue by the pleadings.

We do not reach the respondents' contentions that an abutting property owner must show special irreparable injury different in kind from that sustained by the general public, in order to maintain an action challenging a particular use of a public street or that identity or community of interests is essential to class or representative suit.

Las Vegas Ordinance No. 1321 required underground circuits. That requirement must be construed to include all wiring any way connected to the steel lighting standards authorized in the special assessment district and not merely the wires carrying power to the mercury vapor luminaries.

The power company and the city entered into an agreement authorizing them to jointly violate Las Vegas Ordinance No. 1321. The trial court correctly found that the agreement

between the city and the power company was null, void and against public policy and reached the proper result when it enjoined them from placing and maintaining overhead electric power lines along West Charleston Boulevard in Special Assessment District No. 476.

In support of their contentions that the trial court erred, the appellants rely strongly on Fogg v. Nevada C. O. Ry. Co., 20 Nev. 429, 23 P. 840 (1890). However, an examination of that case reveals that there was no evidence of a violation of a statute or ordinance by the carrier. The holding of the *Fogg* case is controlling only where a statute or ordinance has not been violated. The power company and its predecessor through its franchise agreed to fully observe all of the ordinances and regulations of the city of Las Vegas which were then in existence or which would thereafter be adopted, relative to the making of excavations or the erection of poles or pole lines or the construction and maintenance of conduits in streets, alleys, or public grounds, or the use of power lines. The power company was bound by the provision of Ordinance No. 1321 and it was precluded from entering into an agreement with the city in violation thereof.

When municipal authorities enact an ordinance it is not only binding on those persons and entities coming within its scope but it is also binding upon all municipal authorities until it is properly repealed, which cannot be done by a resolution or a contract. Houvouras v. City of Huntington, 110 S.E. 692 (W.Va. 1922). After Ordinance No. 1321 was enacted it became as binding upon the city commissioners of Las Vegas as any provision of our statutes or a provision of the state or Federal Constitution. John L. Humbard Const. Co. v. City of Middlesboro, 36 S.W.2d 38 (Ky. 1931).

In Meyer v. Seifert, 225 S.W.2d 4 (Ark. 1949), that court said: "If the lawmaking body chooses to include no exceptions in the law, and no provision for authorizing exceptions, then permits to violate it cannot be granted by anybody, not even by the very lawmaking body that enacted the law. The law can be changed or set aside only by a new enactment having the same or greater quality and dignity."

Here any citizen of the city of Las Vegas would have had standing to seek injunctive relief, inasmuch as the relief sought is the abatement of unauthorized conduct. It was the only just, speedy and effective remedy available to the respondent.

The power company argues that it is authorized to place its electric transmission poles in the same area along West Charleston Boulevard where the special assessment district's steel poles are located. That question is not before us and we do not decide it.

We agree with the appellants' contention that the trial court erred when it awarded fees to the respondents' attorney. No where does that court set out its reasons for granting those fees. It could not rely on NRS 18.010(3)(a), because that statute as a condition precedent requires the award of a money judgment. Cf. Blaine Fashions, Inc. v. Scheri Shop, 84 Nev. 339, 440 P.2d 904 (1968). Here the respondent does not ask for any damages and none was awarded. In its complaint the respondent did not allege damages, but alleged the necessity for the services of counsel and simply requested attorney fees.

Had the respondent asked for damages, or the trial awarded attorney fees as an item of damage (McIntosh v. Knox, 40 Nev. 403, 165 P. 337 (1917)), the award would have been proper because the institution of this litigation by the respondent resulted from the improper action of the appellants, and the expenditure by the respondent for the services of counsel was necessary. American Fed. of Mus. v. Reno's Riverside Hotel, Inc., 86 Nev. 695, 475 P.2d 220 (1970).

Because neither damages nor an award of attorney fees as damages are anywhere present in this case and only attorney fees as such were awarded, this case does not come within the reasoning of McIntosh v. Knox, supra, nor our holding in American Fed. of Mus. v. Reno's Riverside Hotel, Inc., supra.

The trial court could not have relied on any statute or rule in effect in this state pertaining to injunctions, in support of his award because they are silent on the matter of attorney fees. Cf. Unity Light & Power Company v. City of Burley, 361 P.2d 788 (Idaho 1961). Without a finding that any of the affidavits presented by the appellants were given in bad faith or solely for the purpose of delay, the trial court could not have relied on NRCP 56(g)[4] to justify its fee award. That court made no finding that any of the respondent's affidavits were presented

---

[4]NRCP 56(g): "Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt."

in bad faith or solely for the purpose of delay, nor does the record so reveal.

Finally if the trial court made its award of attorney fees on the basis of decided cases, its reliance was misplaced because as a general rule, without statutory authority, attorney fees will not be awarded in an action for affirmative injunctive relief in the absence of fraud, malice or wantonness. New York, C. & St. L. R. Co. v. Grodek, 186 N.E. 733 (Ohio 1933); Capital Electric Power Association v. McGuffee, 83 So.2d 837 (Miss. 1955). Here there is no allegation nor any finding of fraud, malice or wantonness.

The judgment of the district court is therefore affirmed as to the injunctive relief granted, but is reversed as to the allowance of attorney fees; and the cause will be remanded for the entry of judgment in accordance with this opinion.

COLLINS, C. J., THOMPSON, J., SEXTON, D. J., and CRAVEN, D. J., concur.