ROLAND H. WILEY; AND ROLAND H. WILEY AS TRUSTEE FOR CAROL THOMAS; CAROL THOMAS AS CUSTODIAN FOR LISA THOMAS; ROLAND JOHN WILEY; AND TRACY E. WILEY, APPELLANTS, *v.* W. T. "TOMMY" COOK; SUN CITY PROPERTIES, INC., A NEVADA CORPORATION; TOMMY J. TERRY, ET AL., RESPONDENTS.

No. 9104

August 9, 1978                                    583 P.2d 1076

[Rehearing denied September 14, 1978]

*George Rudiak Chartered,* Las Vegas, for Appellants.

*Jones, Jones, Bell, LeBaron, Close & Brown,* and *Michael Buckley,* Las Vegas; and *Albright & McGimsey,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

This appeal is from a judgment by the district court which declared valid a 99-year lease and option to purchase a 24-acre tract in North Las Vegas. Appellants claim (1) the judgment is not supported by substantial evidence, (2) the lease-option is unenforceable within the statute of frauds, and (3) the district

court improperly awarded attorneys fees.[1] Finding no reversible error, we affirm.

In April, 1971, Roland Wiley dictated the following agreement to respondent, W. T. Cook:

| Parties: | | |
|---|---|---|
| | Roland H. Wiley | 79.07% |
| | Carol Thomas · | 6.53% |
| | Carol Thomas | |
| | Custodian for Lisa Thomas | 1.6% |
| | Roland John Wiley | 4.8% |
| | Tracy E. Wiley | 8.0% |

Above parties lease for the term of 99 years commencing April 1, 1971 to W. T..Tommy Cook and Tommy J. Terry the 24 acres east of Las Vegas Blvd. North & North Main Streets [sic] in the city of North Las Vegas, Nevada. For the sum of $7,000.00 per month payable in advance by several checks. Leassors [sic] reserve the right to sell said property. However the any. [sic] such sale must have the written consent of the leassees. [sic]

In the event the leassors [sic] have not sold the property within 6 months from date hereof Leassees, [sic] may if they desire purchase said property:

A.   For the sum of $1,500,000.00 at 6% interest payable monthly in advance with $100,000 down payment.

---

[1]At this point in time, we consider it inappropriate to reach appellants' other complaints. The original judgment in this case was rendered April 6, 1976, and notice of entry thereon was given that same day. On May 5, 1976, appellants filed separate motions for new trial, and to amend or make additional findings of fact. On June 28, 1976, appellants filed their notice of appeal from the original judgment, before the district court ruled on appellants' post-trial motions. The notice of appeal stated:

This appeal is "[f]rom the final Judgment entered March 25, 1976, as amended, . . . and as [may in the future be] Amended by Order upon Appellants' [pending] Motion to Amend Findings, Make Additional Findings, and Amend Judgment accordingly;" and "[f]rom the Order [which may] den[y] Appellants' Motion for new Trial and for Leave to File Supplement to Complaint for Unlawful Detainer. . . ."

The above notice of appeal was clearly premature in violation of the rules. See NRAP 4(a); NRAP 3; NRAP 3A(b). On September 23, 1976, the district court finally rendered a "Corrected Judgment." The record does not include any notice of entry or appeal from that judgment. Therefore, we decline to consider any issues which may have been raised by the district court's action after the June 28 notice of appeal was filed.

B. Subject to fulfillment of oral understanding between the parties possession is transferred as of April 1, 1971.

| | |
|---|---|
| W. T. Tommy Cook | Roland H. Wiley |
| Tommy J. Terry | Carol Thomas |
| Dated: This First day | Carol Thomas cust. |
| of April 1971. | for Lisa Thomas |
| | Tracey E. Wiley |
| | Roland John Wiley |
| | Roland H. Wiley |
| | Their attorney |
| | in fact. |

Cook subsequently took possession and paid $7,000 per month rent. After several months, Wiley notified Cook that the above agreement was not valid and binding, and Cook only had a month-to-month tenancy. Thereafter, Wiley insisted Cook pay $8,000 per month rent. Cook paid the increased rent until September, 1973, when he filed his "Complaint for Declaratory Judgment and Injunctive Relief." Wiley subsequently counterclaimed for waste, and payment of some debt obligations not relevant to this discussion.

1. Wiley first contends the district court was required to conclude from the evidence presented that the agreement was really a sham, entitled to no force and effect. *See* Schieve v. Warren, 87 Nev. 42, 482 P.2d 303 (1971). While appellants recognize that this court will not disturb findings made upon substantial evidence, they insist the trial court reached a wrong conclusion from the evidence presented. We note, however, in those cases where this court has applied the so-called "exception" to the substantial evidence rule, the wrong conclusion reached was either inconsistent with uncontroverted evidence, or contrary to objective evidence which overwhelmingly disproved the oral testimony of a party. *See, e.g.,* Seyden v. Frade, 88 Nev. 174, 494 P.2d 1281 (1972); Deiss v. Southern Pacific Co. Et Al., 56 Nev. 151, 47 P.2d 928 (1935); Valverde v. Valverde, 55 Nev. 82, 26 P.2d 233 (1933); Walker Brothers Bankers v. Janney, 52 Nev. 440, 290 P.413 (1930). Here, there was a substantial conflict between the two principal witnesses concerning their intent to be bound by the agreement—i.e. Wiley insisted the agreement was a sham; Cook categorically denied these assertions. In view of such conflicting evidence, we decline to interfere with the district court's findings.[2] Warren v. Warren, 94 Nev. 309, 579 P.2d 772 (1978).

---

[2]The district court made the following relevant findings:
1. That on or about April 1, 1971, Roland W. Wiley acting on behalf of

2. Wiley next contends the agreement is not enforceable pursuant to statute of frauds because (a) the instrument does not include all the essential terms; (b) the description of the land was inadequate; (c) Wiley's agency was not proved; and (d) the instrument was subject to oral understandings. We disagree.

(a) The instrument in question clearly comes within two separate provisions of our statute of frauds. The 99-year leasehold is governed by NRS 111.210; the option by NRS 111.205(1).[3]

Appellants first contend the instrument does not include the "essential terms." *See* Stanley v. Levy & Zentner, 60 Nev. 432, 112 P.2d 1047 (1941); Friedman v. Bergin, 140 P.2d 1 (Cal. 1943); Hanlon v. Hayes, 89 N.E.2d 51 (Ill. 1949); Rohan v. Proctor, 214 P. 986 (Cal.App. 1923). An instrument need not incorporate all the terms agreed upon, if there is "reasonable certainty" as to the underlying contract. *See* Comment to *Restatement of Contracts,* § 207. As stated in the *Restatement,* the following minimum requirements are necessary for all writings which come within the statute:

A memorandum, in order to make enforceable within the Statute, may be any document or writing, formal or informal, *signed by the party to be charged or by his agent*

himself and also acting on behalf of and as Trustee for Carol Thomas, Carol Thomas as Custodian for Lisa Thomas, Roland John Wiley and Tracy Wiley, (lessors . . .) entered into a written 99 year lease and option to purchase agreement with Cook and Terry . . .

4. That . . . Roland H. Wiley and Cook executed the [agreement] with intent to make it a binding agreement between themselves.

5. That on a later date, Terry signed the . . . agreement with the intent that it be a binding instrument.

6. That the terms of the agreement and the manner of its execution were determined by Roland H. Wiley.

These findings were also supported using the doctrine of practical construction. Moore v. Prindle, 80 Nev. 369, 394 P.2d 352 (1964). Wiley's actions after the lease was signed were inconsistent with his claim of month-to-month tenancy. For instance, Wiley sent a letter to a tenant on the property informing him to pay rent to Cook because Wiley had entered into a "long-term lease." Moreover, Cook undertook obligations more consistent with a long-term agreement. *See* point 2(d), *infra.*

[3]NRS 111.210 provides in pertinent part:

"1. 'Every contract for a leasing for a longer period than 1 year, . . . shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made.

"2. Every instrument required to be subscribed by any person under subsection 1 may be subscribed by the agent of the party lawfully authorized."

NRS 111.205(1) provides in pertinent part:

"1. No . . . interest in lands, other than for leases for a term not exceeding 1 year, . . . shall be created, granted, assigned . . . or declared . . . unless . . . in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized in writing."

actually or apparently authorized thereunto, which states with reasonable certainty,

(a) *each party* to the contract . . ., and

(b) *the land,* goods or other subject matter to which the contract relates, and

(c) *the terms and conditions of all the promises constituting the contract and by whom the promises are made.* (Emphasis added.) *Ibid.* § 207.

Moreover, pursuant to statute our legislature has required the recitation of the consideration in any leasehold over one year. NRS 111.210.

Here, we believe all the essential elements were included in the agreement for the 99-year lease. *Cf.* Carlson v. Bain, 182 P.2d 909 (Colo. 1947); Bournique v. Williams et al, 225 Ill.App. 12 (1922). As to the option, however, it is apparent from the face of the instrument, that the time and manner of payment were not included. But this defect will not necessarily invalidate an otherwise binding agreement. "The note or memorandum, . . . need not contain those elements which become a part of the obligation by implication of law, custom, or past practice, and it *need not state all the details or particulars, of the agreement; a statement of the substance of the agreement in general terms is sufficient."* (Emphasis added). Johnson v. Watson, 70 Nev. 443, 447, 272 P.2d 580, 582 (1954). A trial court may also construe an ambiguity in the writing by receiving parol evidence. *Ibid.* The option agreement provided that the lessees were given a right to purchase the land after six months, by tendering $100,000 down on a purchase price of $1,500,000, "at 6% interest payable monthly in advance." The last provision is clearly ambiguous on its face. It is impossible to tell by looking at the instrument whether principal or interest was payable monthly, and over what period of time it was payable. Therefore, the court heard testimony and construed the provision to mean "6% interest, interest only" for 15 years, with the balance of $1,400,000 due and payable at the end of that period. Appellants contend these terms were left to future negotiation in violation of the statute. *Cf.* Howard v. Beavers, 264 P.2d 858 (Colo. 1954); Humpreys v. Day, 254 P.2d 996 (Okl. 1953); Keystone Hardware Corp. v. Tague, 158 N.E.27 (N.Y.App. 1927). It is apparent, however, that the district court concluded otherwise from the conflicting evidence, and found that the above terms were made contemporaneous to the execution of the instrument. Therefore, we decline to disturb the district court's findings.

(b) Appellants next claim the land description was inadequate. To satisfy the statute of frauds the boundaries need only be "ascertainable from the memorandum." Durham v. Dodd, 285 P.2d 747, 749 (Ariz. 1955). Here, we believe the description was more than adequate to satisfy the requirements. *Compare Restatement of Contracts,* § 207, Hypothetical No. 9.

(c) Wiley additionally contends his authority to act as the agent for the other appellants was not proven in writing as required by NRS 111.205(1) and NRS 111.210(2). This issue was not specifically addressed at trial, and will not be considered for the first time on appeal. *See, e.g.,* Holt v. N.I.C., 94 Nev. 257, 578 P.2d 752 (1978). Moreover, any objection to the lack of an agent's written authority must be raised by the principal and not the agent. Mitchell v. Locurto, 179 P.2d 848 (Cal.App. 1947).

(d) Finally, appellants contend the instrument violates the statute of frauds because, by its terms, it was "subject to fulfillment of oral understandings." The evidence presented at trial clearly showed that numerous oral undertakings were part of the agreement. For example, Cook and Terry agreed to assist in the resale of the property for the first six months, pay taxes, repair and maintain the property, assume several notes and obligations, and permit Wiley to occupy a small portion of the property. Each of the above understandings, however, were taken out of the statute of frauds by part performance, *see* Zunino v. Paramore, 83 Nev. 506, 435 P.2d 196 (1967); *cf.* Union Paving Co. v. Teglia, 70 Nev. 494, 274 P.2d 841 (1954), and appellants' contention lacks merit.

3. Appellants additionally contend that even if the instrument met the requirements of the statute of frauds, it should not have been specifically enforced by the court. As noted previously the instrument was not so vague as to be incapable of defining its terms. Any ambiguities which may have been present were construed so as to make the lease and option clearly enforceable by a court of equity. Nor do we believe the district court erred by not finding the consideration inadequate, or respondents guilty of sharp practice, misrepresentation or fraud to prevent specific performance. *Cf.* Nygard v. Dickinson, 97 F.2d 53 (9th Cir. 1938); Bushman v. Faltis, 150 N.W. 848 (Mich. 1915); Mercer v. Payne & Carnaby Co., 192 N.W. 951 (Neb. 1923); *Bournique,* cited above.

4. Finally, appellants insist the district court erroneously awarded $2,500 in attorneys fees on respondents' complaint for declaratory relief. We cannot discern from the record the reasons for the district court's action, but the court was entitled to award fees to respondents as the prevailing defendants on appellants' counterclaim for waste where they "ha[d] not sought recovery in excess of $10,000." NRS 18.010(2)(c), *cf.* City of Las Vegas v. Cragin Industries, 86 Nev. 933, 478 P.2d 585 (1970).

Affirmed.