VIRGINIA L. WOODS, TIMOTHY J. TERRELL AND SUSAN E. TERRELL, Appellants, v. LABEL INVESTMENT CORPORATION, COLD SPRINGS DEVELOPMENT CORPORATION, LEON SCHNEIDER, WESTERN HORIZON REALTY; RAY FARWELL, ESTATE OF JOHN ARDEN, Respondents.

No. 20730

June 6, 1991                                    812 P.2d 1293

*Jonathan H. King,* Reno, for Appellants.

*Roger Wright,* Reno, for Respondents Label Investment Corporation and Leon Schneider.

*Bible, Hoy, Miller, Trachok & Wadhams* and *Sam Benevento,* Reno, for Respondent Cold Springs Development Corporation.

*McDonald, Carano, Wilson, McCune, Bergin, Frankovich & Hicks,* Reno, for Respondents Western Horizon Realty and Ray Farwell.

*Gregory F. Wilson,* Reno, for Respondent Estate of John Arden.

## OPINION

*Per Curiam:*

On April 3, 1978, appellant Virginia Woods purchased a mobile home lot (Lot 47) from Label Investment Corporation (Label) and Schneider, an officer and shareholder of Label. According to Woods, she made the purchase in reliance upon the Subdivision Tract Map provided in the Contract of Sale. The map shows a fifteen foot wide portion of Woods' property, running along the southern boundary line, to contain an easement for half a drainage ditch, with the other half of the ditch on the other side of the boundary line on Lot 46. The ditch was dug, constructed

and located by respondents Cold Springs and John Arden, now deceased, an officer and shareholder of Cold Springs. The map also depicts a power pole and service pole running along the northern boundary line between Lot 47 and Lot 46.

Woods had her mobile home set on her lot in a position within the lot boundary as she believed it to be, with a sufficient set-back distance from the boundary line in accordance with local law. On some date after Woods moved into her home, she had a conversation with a Mr. Sheerman, the then owner of Lot 46. He advised her that there was a serious boundary problem and that one of them would have to move. Although there is no evidence of the exact date of this conversation, the district court found that it was sometime prior to April 5, 1979, when Sheerman quitclaimed his lot to Cold Springs and moved out.

Elmer Plummer, a registered land surveyor, testified at trial that on March 15, 1985, he did a boundary and topo survey of Woods' property. Using monuments, he determined that the ditch was constructed north of the official easement depicted in the plat map. He revealed to Woods that the entire thirty foot ditch is within her property, above the southern boundary line. He also informed her that the northern boundary line was not where the map showed it to be, along the line of the power pole and service pole, and that her lot encroached upon Lot 46 by 2.96 feet.

Meanwhile, in the summer of 1983, appellants Timothy and Susan Terrell contacted respondent Ray Farwell, a salesman for respondent Western Horizon Realty and agent of Cold Springs, concerning a lot for their mobile home. They went with Farwell to the Cold Springs office and arranged to view Lot 46, which Cold Springs owned. Farwell obtained a plat map which was the same or similar to the map Woods relied on in purchasing her lot and home.

Farwell testified that after showing the Terrells several properties, he took them to Reno Park to show them Lot 46. First, he looked for some official markers on the lot, but he could not find any. He says he did not make any definite representations to the Terrells as to the boundaries because he could not find them himself. He used the map to pace off the boundaries. However, he cautioned the Terrells to be sure of the boundaries before setting up their mobile home. Woods also testified that she informed the Terrells of the problem before they placed their mobile home.

Mr. Terrell testified that on at least two of their initial visits to the property, Farwell walked the boundaries and showed him that the two telephone poles were the boundary lines. However, he does not remember if Farwell ever cautioned him with regard to the boundaries or warned him to be sure of the boundaries before

placing the mobile home. Mr. Terrell presented the plat map to the county and requested a building permit. Mr. Terrell says he placed his home in reliance on Farwell's pacing, the plat map, the location of Woods' home, his own observations (planted vegetation by Woods and the granite fill), and common usage of the light pole, which had water meters for each lot. The map indicated that the southern boundary of the mobile home went through the first telephone pole and terminated at the second one. He admits that he never requested a survey of the property and he did not do the measurements in 1983 because of the expense. Then, in October of 1984, when he wanted to put up a fence, he measured the land using survey monuments, a tape measure, and string.

On September 10, 1986, Plummer surveyed the Terrells' property. He found no stakes on the property, and he determined that the ditch was not within its easement as depicted on the plat and that the existing ditch was fifteen feet to the north of where its easement would be. Plummer also testified that if he were to place a mobile home on this property, he would go back to the official plat map and measure. He would not rely on existing improvements, such as ditches, power poles, or buildings on the property.

On May 2, 1985, Woods filed a complaint against Label and Schneider. On September 10, 1985, the Terrells filed a complaint against Cold Springs and Farwell. Because both complaints concerned contiguous boundary line conflicts, the cases were consolidated by Order filed October 1, 1987. On June 16, 1987, Woods' attorney filed notice that certain requested admissions regarding the notice issue were deemed admitted because the respondents failed to respond. On November 5, 1987, Label and Schneider filed answers and denials to the requested admissions, stating that they did not admit that Woods had no notice of the claim and explaining to the court why their answers were late.

After a trial, the district court found that Woods' claim was barred by the statute of limitations, and it entered judgment in favor of the respondents, requiring appellant to pay costs of suit. As to the Terrells' complaint, the court found that if any of Farwell's conduct can be deemed a negligent misrepresentation, the Terrells were not reasonably justified in relying on such conduct. Finally, the court concluded that there was no breach of contract, and it awarded $2,000 in attorney fees to Farwell and $5,000 to Cold Springs under NRS 18.010.

## WOODS' CLAIMS

Woods argues that the district court erred in determining that her complaint was barred by the statute of limitations. She con-

tends that until the survey report was completed, she did not know or have reason to know that the boundary lines had been misrepresented. Woods also asserts that her requests for admissions were deemed admitted, and therefore, the respondents were precluded from raising the statute of limitations issue at trial. For the reasons discussed below, we conclude that the court did not err.

## A. NOTICE

Woods testified that she had an inkling that her trailer was not located entirely upon her own premises when Mr. Sheerman came and told her that "something was all messed up." He told her it looked like her front room was eight feet into his property, and if he put up his fence, it would go right down the middle of her front room. Woods says she cried for a couple of days, but she did not have money to obtain a lawyer, so she put it off. On December 5, 1984, she retained her attorney, and upon his advice, the survey was prepared on March 15, 1985.

The district court found that the statue of limitations began to run on Woods' cause of action when Mr. Sheerman notified her of the boundary dispute sometime before he moved out on April 5, 1979. Because Woods filed her complaint on May 2, 1985, more than six years after April 5, 1979, the court found that her complaint was time-barred.

The statute of limitations with respect to real property damage begins to accrue when the plaintiff knows or has reason to know facts constituting the elements of a cause of action. Oak Grove Investors v. Bell & Gossett Company, 99 Nev. 616, 623, 668 P.2d 1075, 1080 (1983). NRS 11.190 provides a six year limitation period for contract actions and a two year limitation on tort actions. Therefore, if Woods had notice prior to May 3, 1979, her complaint would be barred.

The issue of whether a warning from a neighbor would put a reasonable person on inquiry is a question of fact, and the district court's factual determinations will not be disturbed unless clearly erroneous. Ormachea v. Ormachea, 67 Nev. 273, 280, 217 P.2d 355, 359 (1950). There is evidence in the record that Sheerman informed Woods of the possible problem before he sold his lot. Therefore, we conclude that the court did not err in determining that Sheerman's comments to Woods put her on notice of a boundary dispute and that the conversation took place before May 3, 1979.

## B. ADMISSIONS

Woods argues that the requests for admissions were deemed admitted because the respondents failed to answer in a timely fashion.

Where demand is made upon a party for admission of facts and such party fails to respond to the request, matters contained therein are deemed admitted. Dzack v. Marshall, 80 Nev. 345, 393 P.2d 610 (1964); NRCP 36. However, the district court has discretion with respect to accepting as true a request for admission to which a late response is filed. *See* Wagner v. Carex Investigations & Sec., 93 Nev. 627, 572 P.2d 921 (1977). Exercising its discretion, the district court chose to hear testimony and determine the merits of the case. There is no evidence in the record of any ruling on the late responses, and Woods did not raise the issue at trial. Therefore, we conclude that the district court did not abuse its discretion in permitting the trial to take place and in evaluating Woods' testimony, regardless of any facts initially deemed to be admitted by respondents' failure to timely respond to requests for admissions.

## THE TERRELLS' CLAIMS

The Terrells argue that the district court erred in denying them relief for negligent misrepresentation and breach of contract and in awarding attorney's fees to the respondents. They contend that they reasonably relied on Cold Springs and Farwell's misrepresentations, and as a result, they will have to move their home. The district court found that Farwell expressly advised the Terrells not to proceed any further with the acquisition until the actual boundaries could be determined, and that Farwell's claim that he gave these warnings seems "eminently reasonable," considering that neither he nor the Terrells were able to locate any pins or stakes to show the lot line boundaries. The court also found that the Terrells were put on actual notice when Woods advised them that a potential dispute existed and that they unreasonably relied on extrinsic features such as power poles, ditches, and neighboring improvements in subsequently making a determination as to where to place their home.

In Stone v. Farnell, 239 F.2d 750 (9th Cir. 1957), the court held that the owner of real property is under a duty to inform herself of the true boundaries of land she seeks to sell, and any breach of this duty and misrepresentation of the true boundaries in the sale of property constitutes constructive fraud. The seller

of real property generally does have such a duty. *See* Fuller v. Incopero, 97 Nev. 448, 634 P.2d 452 (1981) (while evidence was sufficient to support inference that vendor and agent negligently failed to ascertain true dimensions of property in question and fraudulently misrepresented dimensions to purchasers, evidence was not sufficient to justify award of punitive damages). *See also* Murphee v. Rawlings, 479 P.2d 139 (Wash. 1970); Weinstein v. Sprecher, 467 P.2d 890 (Wash. 1970). However, the seller is not held to this responsibility if the purchaser has information which would serve as a "red light" to any normal person of her intelligence and experience that the boundaries are uncertain or that he or she should not rely on the seller to accurately describe the property. If the purchaser is aware of facts from which a reasonable person would be alerted to make further inquiry, then he or she has a duty to investigate further and is not justified in relying on the seller's description of the property. Collins v. Burns, 103 Nev. 394, 397, 741 P.2d 819, 821 (1987).

The Terrells had the following "red lights" indicating that they should have either asked the seller to stake the boundaries or obtain a proper survey: (1) Neither Farwell nor the Terrells found any pins or stakes on the lot to indicate boundaries; (2) Woods informed the Terrells of a possible boundary problem prior to the placement of their home; and (3) Farwell told the Terrells that he was unsure of the boundaries and that they should be checked out before their home is installed. We conclude that the district court did not err in finding that the Terrells did not reasonably rely on any of the respondents' misrepresentations.

Next, the Terrells contend that the district court erred in awarding Farwell attorney's fees pursuant to NRS 18.010. We agree. In Nevada, attorney's fees cannot be recovered unless authorized by agreement or by statute or rule. Young v. Nevada Title Co., 103 Nev. 436, 744 P.2d 902 (1987). NRS 18.010 provides in pertinent part:

> 2. In addition to the cases where an allowance is authorized by specific statute, the court may make an allowance of attorney's fees to a prevailing party:
>
> (a) When he has not recovered more than $20,000; or
>
> (b) Without regard to the recovery sought, when the court finds that the claim, counterclaim, cross-claim or third-party complaint or defense of the opposing party was brought without reasonable ground or to harass the prevailing party
>
> . . . .

The court did not specifically state whether it was basing its

award on NRS 18.010(2)(a) or 18.010(2)(b). If the award was based on NRS 18.010(2)(a), then it was improper because a money judgment is a prerequisite to an award of attorney's fees under this subsection. Key Bank v. Donnels, 106 Nev. 49, 787 P.2d 382 (1990). If the district court based the award on NRS 18.010(2)(b), then it was also improper, because there is no evidence in the record that the complaint was brought without reasonable grounds or to harass the other party. Therefore, we conclude that the district court abused its discretion in awarding Farwell attorney's fees.

The Terrells also contend that the district court erred in awarding attorney's fees to respondent Cold Springs. We agree. The district court awarded attorney's fees without citing any authority. In its Supplemental Points and Authorities, Cold Springs concedes that the award was not proper under NRS 18.010 but asserts that the award is supportable based on the provision in a promissory note payable by the Terrells to Cold Springs. However, the promissory note only allows attorney's fees for collection on the note and is therefore not applicable in this case.

Cold Springs argues that the Terrells should be required to pay their attorney's fees for this appeal. This court may award attorney's fees where the appellant raises no new legal arguments or when an appeal is frivolous. In re Herrmann, 100 Nev. 149, 679 P.2d 246 (1984). NRAP 38. After review of the record, we conclude that the Terrells brought this claim in good faith and that it was not a frivolous appeal. Therefore, Cold Springs must pay its own attorney's fees.

The award of attorney's fees is hereby reversed and each party is ordered to pay his or her own attorney's fees. The district court decision is otherwise affirmed.