DEAN SMITH AND RACHAEL J. SMITH DBA JANE ENTERPRISES, APPELLANTS/CROSS-RESPONDENTS, *v.* CROWN FINANCIAL SERVICES OF AMERICA, A NEVADA CORPORATION, CROWN FINANCIAL SERVICES OF AMERICA, A CALIFORNIA CORPORATION, AS A CORPORATE ENTITY AND IN ITS CAPACITY AS GENERAL PARTNER OF INJECTION MOLD PARTNERS, LTD., A CALIFORNIA LIMITED PARTNERSHIP; MICHAEL W. DOOLING, INDIVIDUALLY, RESPONDENTS/CROSS-APPELLANTS.

No. 22964

March 2, 1995
890 P.2d 769

*Michael E. Cirac,* Reno, for Appellants/Cross-Respondents.

*Vernon E. Leverty* and *Betty Baker,* Reno, for Respondents/Cross-Appellants.

# OPINION

*Per Curiam:*

In October 1988, Dean Smith and Rachael Smith, doing business as Jane Enterprises ("appellants"), filed a complaint alleging damages in excess of $110,000 for breach of contract and misrepresentation, and for an accounting of sales of a toy product known as the "Zing Ring" or "Groove Tube." Appellants had executed a "Letter of Intent" with Michael Dooling, the president of Crown Financial Services of America, which in turn was the general partner of the toy manufacturer, Injection Mold Partners, Inc. (collectively referred to as "respondents"). The letter of intent provided that appellants would have the exclusive right to market the toy and would receive a commission of one dollar for every toy sold. The parties subsequently executed an "Addendum to Letter of Intent" under which appellants were entitled to a commission of twenty-five cents for every Zing Ring sold.

Without informing appellants, Crown Financial subsequently granted exclusive national marketing and licensing rights to a third party, who enlisted the interest of a major toy manufacturer. Crown Financial then attempted to unilaterally terminate the letter of intent, precipitating appellants' lawsuit. Prior to trial, appellants declined to accept respondents' unapportioned joint offer of judgment.[1]

After a bench trial, the district court found that the letter of intent was a non-binding "agreement to agree." Accordingly, the district court entered judgment for respondents. Respondents then moved for an award of $59,078.50 in attorney fees pursuant to NRCP 68 and NRS 17.115, and for costs. The district court held that respondents could not recover attorney fees under NRCP 68 or NRS 17.115 because the unapportioned joint offer of judgment was invalid. However, the district court found that

---

[1]In relevant part, the offer of judgment stated:

TO: Plaintiff, Dean Smith and Rachael Smith and their attorney Michael Cirac, Bergmann & Cirac, One East Liberty Street, keno [sic], Nevada, 89501

Defendants, Crown Financial Services of American [sic], a Nevada Corporation, Crown Financial Services of America, a California corporation, as a corporate entity and in its capacity as general partner of Injection Mold Limited Partners, Ltd.; Injection Mold Partners, Ltd., a California Limited Partnership hereby and herewith offers [sic] to allow judgment to be taken in Plaintiff's favor in the amount of total [sic] $5,000.00 in addition to plaintiff's accrued costs, pursuant to NRCP 68 and NRS 17.115.

respondents were entitled to $20,000 for attorney fees and costs pursuant to NRS 18.010. Both parties appeal this award.[2] Respondents also challenge an order of the district court which required respondents to pay half of the cost of preparing a trial transcript for the record on appeal.

## I. ATTORNEY FEES PURSUANT TO NRS 18.010

NRS 18.010(2) states:

In addition to the cases where an allowance is authorized by specific statute, the court may make an allowance of attorney's fees to a prevailing party:

(a) When he has not recovered more than $20,000; or

(b) Without regard to the recovery sought, when the court finds that the claim, counterclaim, cross-claim or third-party complaint or defense of the opposing party was brought without reasonable ground or to harass the prevailing party.

Respondents concede that appellants' suit was neither groundless nor brought for the purpose of harassment. Furthermore, the record on appeal, which includes the trial transcript, would not support such a conclusion. Therefore, the district court must have awarded attorney fees pursuant to NRS 18.010(2)(a).

Respondents claim that, as prevailing parties which recovered less than $20,000 (respondents neither sought nor recovered damages), they are entitled to an award of fees under NRS 18.010(2)(a). Based on the legislative history of the 1985 amendments to NRS 18.010, respondents argue that NRS 18.010(2)(a) permits prevailing defendants to recover attorney fees even though the defendants did not receive a money judgment.

Since the 1985 amendments to NRS 18.010, this court has held that a party may recover attorney fees pursuant to NRS 18.010(2)(a) only if that party received a money judgment at trial. Woods v. Label Investment Corp., 107 Nev. 419, 427, 812 P.2d 1293, 1299 (1991) ("[A] money judgment is a prerequisite to an award of attorney fees under [NRS 18.010(2)(a)]."); Key Bank v. Donnels, 106 Nev. 49, 53, 787 P.2d 382, 385 (1990) ("[B]ecause respondents did not recover a money judgment below," they could not recover attorney fees under NRS 18.010(2)(a).). Having reviewed the legislative history of the 1985 amendments, and the prior history of the statute, we conclude that we should not now deviate from the rule established by Woods and Key Bank.

---

[2] The order of the district court awarding attorney fees and costs is a special order made after final judgment. As such, it is appealable pursuant to NRAP 3A(b)(2). See Schouweiler v. Yancy Co., 101 Nev. 827, 829, 712 P.2d 786, 787 (1985).

## A. Background

NRS 18.010 represents a deviation from the general rule in this country regarding attorney fees:

> It has been a consistent rule throughout the United States that a litigant has no inherent right to have his attorneys' fees paid by his opponent or opponents. Such an item is not recoverable in the ordinary case as damages, nor as costs, and hence is held not allowable in the absence of some provision for its allowance either in a statute or rule of court, or some contractual provision or stipulation. This sweeping general rule has been applied in legions of cases to preclude recovery of attorneys' fees, whether by the plaintiff or by the defendant, from one's opponent in a civil action.

1 Stuart M. Speiser, *Attorneys' Fees* § 12:3 at 463-64 (1973). The American Rule has been explained as "a deliberate departure from the English practice, stemming initially from the [American] colonies' distrust of lawyers and continued because of a belief that the English system favored the wealthy and unduly penalized the losing party." *Id.* at 467. The American Rule also spares litigants and the courts the additional burden involved in litigating the amount of fees which a prevailing party reasonably incurred. *Id.*

Nevada departed from the American Rule in 1951 when it amended the Civil Practice Act to permit the district court to award attorney fees to the "prevailing party" where "(1) the plaintiff does not seek recovery in excess of one thousand dollars ($1,000), or (2) in which the defendant does not seek a recovery in excess of one thousand dollars ($1,000) . . . ." 1951 Nev. Stat. ch. 54, § 1 at 59. In 1957, the legislature amended NRS 18.010(2) to state:

> The court may make an allowance of attorney's fees to:
> (a) The plaintiff as prevailing party when the plaintiff has not sought recovery in excess of $3,000; or
> (b) The defendant as prevailing party when the defendant has not sought recovery in excess of $3,000; or
> (c) The defendant as prevailing party when the plaintiff has not sought recovery in excess of $3,000.

1957 Nev. Stats. ch. 91, § 1 at 129. In 1967, the Assembly Committee on the Judiciary heard testimony that 70% to 90% of contemporary jury verdicts were for a sum less than $9,000. *Hearings on A.B. 223 Before the Assembly Committee on the Judiciary,* 54th Leg. Sess. (1967) (statement of Bob Moore, Reno Attorney). Plaintiffs who sought relatively small recoveries were not being made whole because they were required to pay attorney

fees out of their judgments. *Id.* Likewise, defendants who were vindicated at trial enjoyed a Pyrrhic victory when their attorney fees were substantial relative to the small amount in controversy. *Id.* The Nevada legislature responded by amending NRS 18.010(2), raising the amount in controversy from $3,000 to $10,000. 1967 Nev. Stats. ch. 466, § 1 at 1254. The legislature also changed the measure of a defendant's recovery under NRS 18.010(2)(b) from the amount the defendant "sought" to the amount the defendant "recovered." *Id.*

The subsequent amendments to NRS 18.010(2) indicate the legislature's continuing concern for making litigants in small civil suits whole. In 1977, the legislature amended NRS 18.010 to state:

> The court may make an award of attorney's fees to:
>
> (a) The plaintiff as prevailing party when he has not recovered more than $10,000; or
>
> (b) The counterclaimant as prevailing party when he has not recovered more than $10,000; or
>
> (c) The defendant as prevailing party when the plaintiff has not sought recovery in excess of $10,000.

1977 Nev. Stats. ch. 401, § 4 at 774. With these amendments, the legislature shifted the inquiry under NRS 18.010(2)(a) from the amount "sought" by the plaintiff to the amount actually "recovered." This change equalized the measure of recovery applied to plaintiffs and counterclaimants. Evidently, the legislature considered the amount actually recovered to be a better measure of the size of a civil suit than the amount sought; these amendments prevented parties from invoking or avoiding the operation of the statute simply by pleading damages either less than or in excess of $10,000.

While amending NRS 18.010(2)(a) and (b) as to plaintiffs and counterclaimants, the 1977 legislature declined to amend NRS 18.010(2)(c) relating to defendants. When a defendant prevails at trial, the amount in controversy cannot be measured by the plaintiff's recovery because the plaintiff recovers nothing. Absent a counterclaim, the successful defendant also recovers nothing. Under such circumstances, the only measure of the amount in controversy available to the court is the amount sought by the plaintiff. Accordingly, the 1977 legislature preserved this measure for determining which actions are sufficiently small to justify the special protection afforded to prevailing defendants.

Prior to 1985, this court's decisions implicitly recognized the importance of preserving a measure so as to limit the application of NRS 18.010(2)(a)'s predecessors to small civil actions. In City

of Las Vegas v. Cragin Industries, 86 Nev. 933, 478 P.2d 585 (1970), the plaintiff brought suit against the city and a power company, seeking a permanent injunction against placement of electrical wires above ground and a declaration that an agreement between the city and the power company was contrary to city ordinance. The district court granted summary judgment for plaintiff, and awarded $1,500 in attorney fees to the prevailing plaintiff. *Id.* at 936, 478 P.2d at 587-88. This court reversed, holding that a money judgment was a condition precedent to an award of attorney fees under former NRS 18.010(3)(a).[3] *Id.* at 940, 478 P.2d at 590. Likewise, in International Indus. v. United Mtg. Co., 96 Nev. 150, 156-57, 606 P.2d 163, 167 (1980), this court reversed an award of attorney fees to the successful counterclaimant in an action for declaratory judgment, because the counterclaimant did not recover any damages. In both cases, the prevailing parties sought relief which was not amenable to measurement under the provisions of NRS 18.010; an action for equitable or declaratory relief could impact upon interests worth a nominal amount or millions of dollars. In order to confine the operation of NRS 18.010 to small civil suits, this court limited its application to situations where the prevailing party's recovery was readily measurable against the standard set forth in the statute. In other words, this court recognized the measuring language, "when he has not recovered more than $10,000," as an assumption built into the statute that the statute would have effect only when a party recovered some amount, but less than $10,000, in damages. Thus, the requirement of a money judgment was a product of the specific measuring language utilized in former NRS 18.010(2)(a) and NRS 18.010(2)(b).[4]

## B. The current statute

In 1985, the legislature reconsidered the circumstances under which a litigant should be entitled to recover attorney fees. The

---

[3]In 1969, the legislature transplanted the provision of attorney fees from NRS 18.010 subsection two to subsection three. 1969 Nev. Stats. ch. 247, § 1 at 435. Thus, NRS 18.010(3)(a) was identical to the 1967 legislature's NRS 18.010(2)(a). In 1977, the legislature returned the provision regarding attorney fees to subsection two. *See supra.*

[4]In contrast, former NRS 18.010(2)(c) authorized an award of attorney fees to a prevailing defendant where the plaintiff "sought" no more than $10,000. Because NRS 18.010(2)(c) measured a prevailing defendant's entitlement to attorney fees according to what the plaintiff "sought" instead of according to what the defendant recovered, this court did not make the recovery of money damages a prerequisite to an award of attorney fees under this provision. *See* Wiley v. Cook, 94 Nev. 558, 566, 583 P.2d 1076, 1080 (1978).

legislative history indicates that the legislature was concerned that a plaintiff could avoid former NRS 18.010(2)(c) simply by claiming damages in excess of $10,000. *Hearings on A.B. 185 Before the Senate Committee on the Judiciary,* 63rd Leg. Sess. (1985) (statement of Jim Spencer, Attorney General's Office). One legislator indicated his belief that the amendments to NRS 18.010 would eliminate differential treatment of plaintiffs and defendants. *Hearings on A.B. 185 Before the Assembly Committee on the Judiciary,* 63rd Leg. Sess. (1985) (statement of Assemblyman Sader). However, the version of NRS 18.010(2)(a) which the legislature adopted does not manifest such a purpose.

When determining how to give effect to a statute, a court should look first to its plain language. Farmers Group, Inc. v. Williams, 805 P.2d 419, 422 (Colo. 1991). The express language of NRS 18.010(2)(a) permits a "prevailing party" to recover attorney fees "[w]hen he has not recovered more than $20,000." The term "prevailing party" is a broad one, encompassing plaintiffs, counterclaimants and defendants. However, the measuring language of NRS 18.010(2)(a) is identical to the measuring language of former NRS 18.010(2)(a) and NRS 18.010(2)(b). As noted previously, this same language has consistently been interpreted as requiring a money judgment prior to an award of attorney fees. "[W]here the legislature uses words which have received judicial interpretation, they are presumed to be used in that sense unless the contrary intent can be gathered from the statute." Application of Filippini, 66 Nev. 17, 24-25, 202 P.2d 535, 538 (1949). The legislature's employment of the same measuring language suggests that the legislature did not intend to eliminate the requirement of a money judgment.

Assuming that the language of NRS 18.010(2)(a) is amenable to more than one interpretation, "it is the duty of this court to select the construction that will best give effect to the intent of the legislature." Casazza v. A-Allstate Abstract Co., 102 Nev. 340, 344, 721 P.2d 386, 388 (1986). It would appear that the legislature, or at least some of the legislators, had several different intentions which are not necessarily expressed in the statute and which are not consistent with one another.

Respondents contend that the legislature's use of the term "prevailing party" evidences its intent to afford plaintiffs and defendants an equal opportunity to recover attorney fees pursuant to NRS 18.010(2)(a). Based on some of the testimony regarding the bill, this position has merit. However, if we accept the view that no money judgment is required for an award of attorney fees,

we are not achieving equal opportunity, but rather heavily weighting the opportunity in favor of defendants. A defendant, as opposed to a counterclaimant, neither seeks nor recovers damages. Thus, a prevailing defendant would always satisfy the measuring language of NRS 18.010(2)(a) and would be entitled to recover attorney fees regardless of the amount which the plaintiff sought to recover. Consequently, a successful defendant in a multi-million dollar suit could receive an award of attorney fees from the plaintiff. In contrast, if the plaintiff prevailed in a multi-million dollar suit, the plaintiff could not receive an award of attorney fees because he recovered more than $20,000. Thus, eliminating the requirement of a money judgment will not provide plaintiffs and defendants with an equal opportunity to recover attorney fees. Furthermore, the legislative intent that this statute apply only to small cases would be frustrated.

Alternatively, if this court interprets NRS 18.010(2)(a) as retaining the requirement of a money judgment, the statute will favor plaintiffs over defendants because defendants, as opposed to counterclaimants, never receive a money judgment. Thus, while a prevailing plaintiff (or counterclaimant) in an action for less than $20,000 may always seek attorney fees under NRS 18.010(2)(a), a prevailing defendant in a similar action can never recover attorney fees because he does not secure a money judgment. Accordingly, there is no way to interpret NRS 18.010(2)(a) so that plaintiffs and defendants have the same opportunity to recover attorney fees.

Given two alternative interpretations of NRS 18.010(2)(a), neither of which is entirely consistent with the 1985 legislature's purpose, we choose the interpretation which best comports with general principles of law and the precedents of this court. We hold that the recovery of a money judgment is a prerequisite to an award of attorney fees pursuant to NRS 18.010(2)(a).[5]

Although neither possible interpretation of NRS 18.010(2)(a) will satisfy one of the objectives of the 1985 legislature, we note that the interpretation we today reaffirm is more consistent with

---

[5]The legislative history suggests that the legislature abrogated the measuring language of former NRS 18.010(2)(c) so that plaintiffs could not deny defendants the right to attorney fees simply by inflating their claims in excess of the statutory amount in controversy. If this was the case, the defect in NRS 18.010(2)(a) is due to the fact that the legislature did not replace the measuring language of former NRS 18.010(2)(c) with another standard of measurement. As a result, the rule embodied in former NRS 18.010(2)(c) was not carried over into the current statute. In effect, NRS 18.010(2)(a) combines former NRS 18.010(2)(a) and NRS 18.010(2)(b) within a single provision which uses similar measuring language, and it abandons the rule of former NRS 18.010(2)(c).

the balance of policy interests which has shaped this rule since its inception in 1951. From the outset, the legislature intended NRS 18.010(2)(a) and its predecessors to afford litigants in small civil suits the opportunity to be made whole. Although the legislature has attempted to fine tune the statute over the years, the legislature clearly has not abandoned its underlying purpose. At every turn, the legislature also limited the scope of NRS 18.010(2)(a)'s predecessors so as to minimize any harmful impact upon the policies underlying the American Rule on attorney fees.

Under the present formulation of the statute, eliminating the requirement of a money judgment would afford some prevailing plaintiffs (those recovering no more than $20,000) and all prevailing defendants the opportunity to recover attorney fees. This over-inclusive result could deeply offend the policy underlying the American Rule which seeks to provide less affluent people with access to the courts. For example, a plaintiff in a personal injury or products liability case would not only be required to pit his meager resources against those of a large insurance company or manufacturer, he would also risk the potentially devastating burden of paying for this marshalling of superior resources should he lose.

By retaining the requirement of a money judgment, this court preserves the right of some plaintiffs (and counterclaimants) to recover attorney fees while subjecting defendants to the common law rule. Although this under-inclusive rule gives plaintiffs an advantage, it does so only in cases involving $20,000 or less. This rule is faithful to the language of NRS 18.010(2)(a), it provides a significant portion of the intended class of beneficiaries with the intended benefit of being able to recover attorney fees, and it minimizes any harmful impact upon the policies underlying the American Rule.

Respondents contend that retaining the requirement of a money judgment will cause additional burdens for litigants and the courts because the rule encourages defendants to manufacture counterclaims under which they can recover a money judgment, thereby coming within the operation of NRS 18.010(2)(a). We believe that NRS 18.010(2)(b) and NRCP 11 are sufficient safeguards to protect the judicial system from this type of abuse.

Respondents could not recover attorney fees pursuant to NRS 18.010(2)(b). Respondents did not recover a money judgment; therefore, they could not recover attorney fees pursuant to NRS 18.010(2)(a). Accordingly, we hold that the district court erred in awarding attorney fees pursuant to NRS 18.010.

## II. ATTORNEY FEES PURSUANT TO NRCP 68 AND NRS 17.115

The district court ruled that respondents could not recover attorney fees pursuant to NRCP 68 and NRS 17.115 because the unapportioned joint offer of judgment which respondents made to appellants was invalid for that purpose.[6] Respondents contend that their unapportioned joint offer of judgment should be deemed valid because they were completely exonerated of any liability at trial.

This court has held that an unapportioned joint offer of judgment is invalid regardless of whether the defendant prevails at trial. Bergmann v. Boyce, 109 Nev. 670, 856 P.2d 560 (1993). Thus, respondents' unapportioned joint offer of judgment was ineffective. Accordingly, we affirm the ruling of the district court that respondents could not collect attorney fees pursuant to NRCP 68 and NRS 17.115.

## III. COSTS.

The district court awarded both attorney fees and costs "pursuant to NRS 18.010." Appellants correctly note that NRS 18.010 does not authorize an award of costs, and to this extent the district court erred. However, as the prevailing party in an action for damages in excess of $110,000, respondents were entitled to recover costs as a matter of right pursuant to NRS 18.020(3).[7] Therefore, the error of the district court was harmless.

Although we affirm the award of costs, we must remand the case because the district court did not segregate the amount awarded as costs from the amount awarded as attorney fees. On remand, the district court should determine the amount of respondents' costs and make an appropriate award.

## IV. COST OF PREPARING RECORD ON APPEAL

The district court ordered the parties each to pay half of the

---

[6]NRCP 68 and NRS 17.115 both permit a party to make an offer of judgment to the opposing party. If the opposing party does not accept the offer, and the opposing party receives a judgment at trial which is not more favorable than the offer, the district court may award the offeror attorney's fees incurred from the time the offer was made. NRCP 68; NRS 17.115.

[7]NRS 18.020(3) states in relevant part: "Costs must be allowed of course to the prevailing party . . . [i]n an action for recovery of money or damages, where the plaintiff seeks to recover more than $2,500."

cost of preparing a trial transcript for the record on appeal. Respondents complain that the district court should not have required them to pay half of the cost of the trial transcript because they did not designate it as part of the record on appeal and because it was irrelevant to the issues on appeal. Appellants counter that they included the trial transcript because, though respondents have since conceded the issue, respondents refused to stipulate that the district court could not have awarded attorney fees pursuant to NRS 18.010(2)(b). In its order, the district court stated that it split the cost of the trial transcript between the parties because respondents "may raise the issue of the recovery of attorney's fees under NRS 18.010(2)(b) as a response" to appellants' appeal.[8]

When the appellant designates a trial transcript as part of the record on appeal, the appellant is responsible for providing the transcript. NRAP 10(b). The same rule applies to cross-appellants. NRAP 11(a). Therefore, when both parties appeal, each party pays the cost of transcripts which it alone designates and the parties split the cost of transcripts which they both designate. Respondents did not designate the trial transcript as part of the record on appeal, therefore the district court could not order respondents to pay half the cost of the transcript in contravention of the rule.

However, while NRAP 10(b) and NRAP 11(a) govern the initial allocation of the cost of transcripts, other rules permit this court to make a subsequent reallocation of this cost. *See, e.g.,* NRAP 10(f); NRAP 39(a), (e). Under the circumstances of this case, fairness dictates that the parties split the cost of the trial transcript. NRAP 39(a), (e). Though the district court erred in initially allocating the cost of the transcript between the parties, we conclude that no corrective action is necessary.

## V. CONCLUSION

Respondents could not recover attorney fees under NRS 18.010(2)(a) because they did not receive a money judgment at trial. Respondents could not recover attorney fees under NRS 18.010(2)(b) because appellants' action was neither groundless nor calculated to harass respondents. Therefore, the district court erred in awarding attorney fees pursuant to NRS 18.010.

---

[8]We note that this dispute, and the expense of copying the entire trial transcript, could have been avoided had the district court clarified that it based the award of attorney fees upon NRS 18.010(2)(a) and not upon NRS 18.010(2)(b).

The district court properly denied an award of attorney fees pursuant to NRCP 68 and NRS 17.115 because respondents' unapportioned joint offer of judgment was invalid.

Though it did not cite the correct authority, the district court properly awarded respondents their costs. Because the district court did not segregate the award of attorney fees from the award of costs, we must remand to the district court so that it can make an award of costs alone.

Finally, the district court erred in ordering the parties to split the cost of preparing the trial transcript for the record on appeal. However, under the circumstances of this case, we conclude that no corrective action is necessary.

We have carefully reviewed the other contentions of the parties and conclude that they either lack merit or have been rendered moot by our decision. Accordingly, the order of the district court is affirmed in part, reversed in part, and remanded for a determination of respondents' costs.